THE FIRST NATIONAL BANK of Champlain, Respondent, *v.* ORVILLE K. WOOD et al., Appellants.

Where two firms, with one or more common members, have mutual dealings, one of the firms may give its notes for an amount found due from it on settlement of the account to the other or to individual members thereof; and *it seems*, actions at law may be maintained upon said notes without an accounting as between the members of the firm giving the notes. .

While individuals who receive gifts of negotiable securities take them subject to all equities existing at the time between the original parties, they are not subject to such as may arise thereafter.

In 1876, upon settlement of accounts between the firm of O. K. W. & Co., which was composed of three members, and the firm of V. A. W. & Co., composed of two members, who were also members of the former firm, a sum was found due the latter firm from the former. In settlement thereof it was agreed that O. K. W. & Co. should give its notes to each of the members of V. A. W. & Co. for one-half of the amount. At their request the note to which each was entitled was made payable to

his wife. Each received his note and delivered it to his wife as a gift, and it was thereafter retained by her. O. K. W. & Co. paid interest on said notes each year up to 1884, by giving to the holders its notes therefor; in May of that year it became insolvent and made an assignment for the benefit of creditors, preferring the wives to the amount of the original notes and those given for interest. In an action by a judgment creditor of O. K. W. & Co., a portion of whose claim accrued in 1879, to set aside said assignment as fraudulent because of said preferences, *held*, that the action was not maintainable; that the payees named in the notes became absolute owners upon delivery to them, to the same extent as if they had paid value; and that such title and consequent right of recovery were in no way diminished or affected by the subsequent dealings or complications of the two firms.

*Phipps* v. *Sedgwick* (95 U. S. 3); *Fox* v. *Hanbury* (2 Cowp. 445); *Menagh* v. *Whitwell* (52 N. Y. 146); *Tarbell* v. *West* (86 id. 280), distinguished.

*F. N. Bank* v. *Wood* (45 Hun, 411), reversed.

(Agued May 6, 1891; decided June 2,1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 11, 1887, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to set aside an assignment by the firm of O. K. Wood & Co., and an assignment by each of two of the members of said firm, on the ground of certain alleged fraudulent preferences in favor of the wives of said members.

The facts, so far as material, are stated in the opinion.

*George H. Beckwith* for appellants. The affirmative findings of fact are in conflict with the conclusion of the referee that the notes of O. K. Wood & Co., given by two of the firm to their wives, were fraudulent and void as against the creditors of the firm. (*P. Bank* v. *Stafford*, 89 N. Y. 408.) The preference of the notes to Victor's wife, and of those to the wife and children of Orville, was not illegal, fraudulent or void. (76 N. Y. 630; *Putnam* v. *Hubbell*, 42 id. 106; 88 id. 299; 96 id. 538; *Whiton* v. *Snyder*, 88 id. 305; 80 id. 442; *Coutant* v. *Schuyler*, 1 Paige, 318; *Mattingly* v. *Nye*, 8 Wall. 307; *Horback* v. *Hale*, 112 U. S. 149; *Parish* v. *Stone*, 14 Pick. 198; *Livermore* v. *Northrop*, 44 N. Y. 107.)

The conclusion of the referee is erroneous and the report and judgment should be reversed, because the respondents have not exhausted their legal remedy. (*McCartney* v. *Bostwick*, 32 N. Y. 53; *Ballou* v. *Jones*, 13 Hun, 629; *Adsit* v. *Butler*, 87 N. Y. 585.)

*R. Corbin* for respondent. The debts did not express a proper partnership debt at all. (*Richardson* v. *Bank of England*, 4 M. & C. 165; 91 N. Y. 413; *In re Rieser*, 19 Hun, 202; 81 N. Y. 629.) When a firm is indebted to one partner and both the firm and the partner become insolvent at the same time, the creditors of the partner have not a right to share with the creditors of the firm, but the latter must first be paid in full. The creditor-partner, if solvent, could not receive any of the firm assets until its creditors were fully paid, and his creditors can take no greater rights than he had. (*Peckham* v. *Mattison*, 15 Abb. [N. C.] 367; 21 N. Y. 587; Story on Part. § 390; 52 N. Y. 159.) The firm notes under consideration express nothing but an indebtedness existing at the time of their making from the firm to an individual member of the firm. This indebtedness is attempted to be transferred by the individual member to his family as a gift. The firm becomes insolvent, and then attempts to appropriate the assets of the firm to the satisfaction of the gift of the individual member of the firm. (*Menagh* v. *Whitwell*, 52 N. Y. 146; 86 id. 287.) The defense to a creditors' bill that the judgment debtor had property out of which judgment might have been satisfied, is affirmative, and to be set up in answer. Plaintiff must have an opportunity of meeting and controverting. And the non-levy must be result of collusion. (25 N. Y. 430.) When the right to file a creditors' bill once exists by return of execution unsatisfied, it is not taken away by the existence of property of debtor subject to execution. A levy cannot be pleaded in bar to the suit. (6 Paige, 273.) The creditor has a right to resort to the debtor in the first instance, retaining the pledge for any deficiency which he may be unable to collect of his debtor. (7 Abb. [N. S.] 217.)

Peckham, J. The report of the referee shows that at the time the notes in question were executed by the firm of O. K. Wood & Co., it was solvent, and that it had at such time net assets of the amount of over $65,000, which increased annually up to 1882, when the sum was over $152,000. It further appeared that in 1876 the firm was composed of three members, viz. : Orville K., Victor A. and Albert G. H. Wood, and it had had mutual dealings with a firm called V. A. Wood & Co., which was composed of but two of the three members of O. K. Wood & Co., viz. : Orville K. and Victor A. Wood, and there had been a settlement of such mutual dealings, and after the settlement it appeared that the firm of O. K. Wood & Co. was indebted to the firm of V. A. Wood & Co. in a certain amount then stated, and for one-half this sum it was arranged the firm should give its note to V. A. Wood, and for the other half to O. K. Wood.

In carrying out this agreement the firm, at the request of V. A. Wood, made its note for his one-half of the debt, payable to his wife, and delivered it to V. A. Wood, who accepted it and immediately delivered it to his wife as a gift, who received it and still retains it. Practically the same thing was done with the other half of the indebtedness to O. K. Wood. The firm paid interest on the notes each year up to 1881 by giving its notes therefor. Eight years subsequent to the giving of the original notes and in May, 1884, the firm of O. K. Wood & Co. became insolvent and made an assignment for the benefit of its creditors, in which it preferred as creditors the wives who held the notes above mentioned, to the amount thereof and interest.

In December, 1884, the plaintiff recovered judgment for nearly $8,000 against the firm of O. K. Wood & Co., upon an indebtedness of which the sum of $1,500 accrued December 3, 1879, and the residue subsequent to that date. The plaintiff having issued execution upon its judgment, which was returned unsatisfied, commenced this action to set aside the assignment and for the appointment of a receiver and the payment of its judgment out of the property coming to him.

The evidence is not returned and it is clear from the facts found that the referee based his finding that the assignment was fraudulent and void as against the plaintiff upon the sole fact that this preference was given as above stated.

An accounting had been had between these firms and a settlement reached, and it then appeared that the O. K. Wood & Co. firm owed the other firm the amount named. This is admitted. The notes were given in acknowledgment of such indebtedness. If they had been given directly to the members of the V. A. Wood & Co. firm, that firm could have maintained an action upon them at their maturity against the makers if the notes had not been paid. One partner may give a note upon firm matters to another partner in the same firm, and the holder may maintain an action at law upon it without an accounting. (*Townsend* v. *Goewey*, 19 Wend. 424; *Crater* v. *Bininger*, 45 N. Y. 545; see, also, *Cole* v. *Reynolds*, 18 id. 74.)

Here there was an accounting, and the notes having been given in acknowledgment of the debt then existing and being in the hands of third persons, no question can arise in the law of partnership relating to the so-called anomaly of one person suing himself. But the case of *Cole* v. *Reynolds* (*supra*), shows there is no difficulty even there where the case is that of two firms with one or more common members. The result of the action of the parties was simply a transfer of the firm debt to the respective wives. At this time the firm was solvent. The transaction was, in substance, the same as if the makers had made the notes payable to the two members of the other firm and had thus delivered them to such members, and those members had then indorsed and delivered them to their wives as free and voluntary gifts. If the makers of the notes had thus delivered them to the other partners as payees, the title to the debt, of which the notes were evidence, would have then gone to the payees, and if the payees had transferred the notes by gift and delivery to their wives, the title to that debt would have been also transferred with and followed the notes and would have remained, one-half with each of such wives.

This result is not in the least affected because the transaction took the form of a division of the debt into two parts, evidenced by notes for each half and payable one-half to the wife of V. A. Wood and one-half to the wife and children of O. K. Wood. This was a matter wholly immaterial to the makers of the notes and when, pursuant to the arrangement, they delivered the notes thus made to the two members of the V. A. Wood & Co. firm, they did precisely the same thing as if they had made the notes payable to the order of that firm instead of to the order of their wives. And when V. A. Wood and O. K. Wood transferred the notes thus made to their wives, it was precisely the same as if the notes had been made payable to the firm or to bearer and they had then transferred them. It is true that at the time of the transfer all the equities then existing between the makers of the notes and the two members of the V. A. Wood & Co. firm, accompanied the notes in their transfer by the members of such firm to their wives. In fact there were no equities. The debt was an honest one; it was due, and the firm that owed it was largely solvent and recognized its obligation and gave the notes. It is admitted that the donees might at that time have maintained an action against the makers on the notes and recovered thereon. If so, it could only be upon the ground that they had become the owners of the notes. They became such owners only by virtue of a voluntary gift accompanied by an immediate and unconditional delivery. This, indeed, did give to the donees a perfect title and absolute ownership to and in the notes, as there were then no equities existing between the original parties. (Byles on Bills [7th Am. ed.] 126; *Milnes* v. *Dawson*, 5 Ex. 948.) The notes represented the original debt. How is it then that such ownership, although absolute at the time of the transfer and giving the holders of the notes a right of action, shall nevertheless, if not acted on by collecting the money, be liable at any future time to be changed and, indeed, extinguished by matters subsequently arising between those original parties? I know of no principle which would authorize it.

Upon these facts the defendants had become the absolute

owners of the notes to the same extent they would have been if they had paid value therefor, and I am of the opinion that such title and right of recovery are in no way diminished by the subsequent dealings or complications of those original parties between themselves any more than their title would have been affected thereby had they paid a consideration of dollar for dollar equal to the face of the notes. (Byles, *supra ; Milnes* v. *Dawson, supra.*)

People who receive gifts of negotiable securities, take them subject to all equities then existing between the original parties, but not subject to all which may thereafter, and while they are absolute owners of such securities, exist between those parties. (*Chamberlain* v. *Gorham,* 20 Johns. 144; *Hedges* v. *Sealy,* 9 Barb. 214 ; *Furniss* v. *Gilchrist,* 1 Sandf. Superior Ct. 53 ; *Elwell* v. *Dodge,* 33 Barb. 336, 343 ; 2 Rand. on Com. Paper, § 675 ; *Baxter* v. *Little,* 6 Met. 7.)

If the parties to whom these notes were delivered by the V. A. Wood & Co. firm had been in no way connected with that firm, and had paid value for the notes, I think they would not have acquired any more of a legal title to them than did the wives of the two parties.

The only difference in their rights upon the notes would lie in the fact that certain defenses, if they existed at the time of the transfer of the notes, might be sufficient for the makers in the case of the wives of the partners, while they would be unavailing in the other case. As no such defenses in fact existed, the title acquired by the wives by reason of the gift was perfect.

The O. K. Wood & Co. firm owed this debt, and it was a firm debt, and it had never been paid. There was, therefore, no reason why it should not be preferred in this assignment.

The case of *Phipps* v. *Sedgwick* (95 U. S. 3), is not in point. It appears in that case that the member of the firm (Mr. Place) had given his obligations to pay what amounted to $90,000 on a house building, and those were his personal obligations, and *at their date* the debt they represented was not a debt of the firm. If he afterwards took the money of

the firm to pay those individual obligations at a time when the business of the firm could not stand it, the court held the transaction must be treated as of the date when the money was so withdrawn, and its honesty tested by the condition of the business at that time.

In this case the debt was in its origin a firm debt, and the firm gave a written obligation to pay it. By a legal transfer the debt has become the property of the wives of the then creditor members of the firm, and they became such owners at a time when there was no defense to the notes as between the original parties to them.

The plaintiff in answer to these views claims that the notes should be treated in the same way as if they represented advances made by the partners to the firm, and he insists that they can be paid only upon an adjustment of the partnership accounts at the time of the dissolution of the partnership, and until then constitute no indebtedness. The truth is the parties made no advances to the firm, and the notes cannot represent a substance which never existed. The makers of the notes owed the two members the sum represented by the notes, and that sum was a proper partnership debt. A partner who simply makes an advance to the firm, relying upon an implied promise of the firm to repay, occupies a totally different attitude from one member of a firm who has had an accounting with the firm, and upon that accounting has been found to be its creditor, and who has then taken from the firm a written promise to pay the debt thus found due him.

In the first case the promise which is implied in favor of the partner who makes the advances is that the firm will repay such sum as may be found due the member upon an accounting, while in the other case the express promise excludes any implication whatever and may be enforced according to its terms. The result is that in some cases the assignee of the debt can subsequently maintain an action thereon, where the assignor, at the time of the commencement of the action, could not. This is not at all inconsistent with the cases which hold the principle that no one deriving under the partner (assignor)

can be in a better position than such partner, that is, a better position than the partner was when he assigned. The case of *Fox* v. *Hanbury* (2 Cowper's Rep. 445), as stated by MANSFIELD, C. J., involved the question whether assignees under a joint commission against two partners, taken out after the bankruptcy of both, could maintain an action of trover against a person in possession of goods under a sale or consignment *bona fide* for a valuable consideration and without any mixture of fraud, from one of the partners who had not then committed any act of bankruptcy himself, but after an act of bankruptcy committed by the other partners. The court held the consignment was good and that the assignees stood exactly in the position of the bankrupts, and they could not come against a *bona fide* consignee of the solvent partner, and, therefore, the firm assignees could not. There is the element in that case of a *bona fide* consignee for value. The only effect of the consideration would, however, be to uphold the transaction, where, if there had been only a gift, it would not have been upheld because of an assignment of property of the firm after an act of bankruptcy by one of its members.

In this case if the members of the V. A. Wood & Co. firm had kept the notes in their own possession without assignment until the O. K. Wood & Co. firm became insolvent, and had then by gift transferred the notes to their wives, the latter would have taken simply the right which their husbands had, and as they could not, at the time of the transfer, have maintained an action upon the notes without an accounting and the preference of other firm debts, it would follow that their voluntary transferees could not. So the question is really reduced to the point as to what was the right of the transferee at the very moment of transfer. If at that time the notes could have been sued upon by the transferrer, that right went to the transferee, and could not, therefore, be altered by subsequent matters between the original parties.

The principle of the case of *Menagh* v. *Whitwill* (52 N. Y. 146), is in no wise antagonistic. The questions there arose upon certain mortgages made by two out of three members of

a firm of their interests in the firm, to secure individual debts, and upon a transfer by the third member of his interest therein to a stranger. It was held that a transfer made, or a lien given, by one member of a firm, transferring or incumbering the *corpus* of the partnership property to pay or secure an individual debt, although made with the consent of the other partners, is void as to the creditors of the firm, unless the firm were then solvent and sufficient property remained to pay the partnership debts.

The case of *Tarbell* v. *West* (86 N. Y. 280) is in principle the same as that just cited from 52 N. Y. (*supra*). Both cases arose under an attempt to transfer or mortgage the individual interest of a member of the firm, and the doctrine was reasserted in the latter case, that a purchaser from one member of a firm of his interest therein acquires only the assignor's share of the surplus after an accounting and adjustment of the partnership affairs, with an exception in regard to real estate under certain circumstances not important to be considered here.

I have found no case which, under the circumstances of the case at bar, prohibits the making of a like promise, or its transfer, or the right of the makers to provide for the payment of the firm debt by a preferential assignment.

The preferences in the individual assignments of O. K. & V. A. Wood of their individual property to pay these notes, may have been invalid. There are scarcely facts enough to enable us to say, and they may be presented in an entirely different manner upon a new trial.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.