the decree of the Surrogate's Court should be reversed and the issues tried before a jury.

HARDIN, P. J., and MERWIN, J., concurred.

In the Matter of the Claim of MARY BINGHAM, Respondent, v. DANIEL M. TUTTLE, as Assignee for the Benefit of the Creditors of E. C. STARK & Co., Appellant.

*Partnership — division of profits by a credit to each member of the firm — right of an assignee of the amount set off to one partner as against an assignee for the creditors of the firm.*

A division of their assets by solvent partners is valid, and a transfer by one of the partners of the partnership assets so acquired in payment of his personal debts is also valid.

When the profits of a solvent firm are by agreement divided between the partners, and credited to each upon the books of the company, there is created a separation from the firm assets of the portion so divided, and the title thereto passes as completely and effectually as it would if a note or certificate of deposit was given therefor by and in the name of the firm.

After the division of such profits and the giving of such individual credit to each of the two partners, such credit, as between the parties, is a valid debt from the firm to each of its members for the amount of the divided profits credited to them respectively; and immediately after such division an action may be maintained by either one of such partners against the firm, to recover his respective portion of such divided profits, and if either of the partners, during the solvency of the firm, makes a transfer of his portion of such divided profits, his assignee may maintain an action against the firm for the recovery thereof. After the assignee of one of the partners acquires such right to her assignor's share of such divided profits it cannot be altered or changed by any subsequent dealings or complications arising between her assignor and the firm of which he is a member, or between the members of such firm. The fact that the firm becomes insolvent after such transfer to her, and makes an assignment for the benefit of its creditors, does not affect her right to recover from the general assignee of the firm the amount of such divided profits so credited to one of the partners individually, and by him transferred to her.

APPEAL by the defendant, Daniel M. Tuttle, as assignee for the benefit of the creditors of E. C. Stark & Co., from a judgment of the County Court of Madison county in favor of the plaintiff, entered in the office of the clerk of the county of Madison on the 8th day of May, 1894, upon the report of a referee, and also from an order entered in said clerk's office on the 7th day of May, 1894, confirming the said referee's report, and directing the entry of judgment thereon, with notice of an intention to bring up for review on such appeal the referee's report, the order of confirmation thereof, the judgment and all the exceptions taken, made and filed in the case.

*Tuttle & Ransom*, for the appellant.

*J. S. Baker*, for the respondent.

MARTIN, J.:

This is an appeal from a judgment entered in Madison county May 8, 1894, for $12,726.70 damages and costs. The judgment was entered upon an order of the Madison County Court confirming the report of a referee appointed by that court to try the issues and report to the court upon a claim for $12,500, presented by the plaintiff to the defendant as assignee for the benefit of creditors of E. C. Stark, which was disputed by the assignee. Prior to the time of the assignment the firm of E. C. Stark & Co. was composed of Elverton C. Stark and Rinaldo M. Bingham, and was engaged in the business of private bankers at Oneida, N. Y. They had been engaged in that business since 1875. During a portion of that time, and from 1888, they alone constituted the partnership, and during other portions there was one and part of the time there were two other members of the firm.

The capital of the firm was $20,000. Of this Bingham furnished one-fourth and the other partners three-fourths. Elverton C. Stark subsequently acquired the interest of the other members of such firm, so that from 1888 Bingham owned one-fourth of the capital and Elverton C. Stark three-fourths.

The business of the firm was a very profitable one. A dividend of ten per cent upon the capital was annually declared for the first ten or eleven years, and the profits in excess of the amount of such

## MATTER OF BINGHAM.

53

dividends were carried into a surplus account. In each of the years 1887, 1888 and 1889 a dividend or division of profits was made between the partners to the amount of fifty per cent upon the capital furnished by each. In 1890 a division or dividend of 100 per cent was divided between the partners, leaving a balance of $28,000 to the credit of the surplus fund account. When these divisions were made the firm of E. C. Stark & Co. was solvent, the condition of the firm was such as to fully warrant them, and they were made in good faith and without intent to defraud any one. Upon making such dividends or divisions, the amount due each was credited on the deposit ledger of the firm to his individual account. After these divisions or dividends were made, there stood to the credit of Bingham upon the deposit ledger the sum of $12,500, which was at all times available and subject to be drawn out by him. The other partner did drawn out and use his dividends or portion of the profits. Bingham drew none, and the $12,500 still remains to his individual credit on the books of the firm.

On the 31st day of January, 1891, Bingham transferred these dividends or deposits to the plaintiff, who was his wife, as collateral security for certain indebtedness due her from him and from the firm of R. M. Bingham & Co. That he and the firm of R. M. Bingham & Co. were indebted to the plaintiff to an amount greatly exceeding the amount of such deposit was clearly proved. The proof also shows that her debt, after receiving all she could collect on other securities transferred to her, is more than the amount of such deposit.

On the 13th of July, 1891, nearly six months after the transfer to the plaintiff, the firm of E. C. Stark & Co. was dissolved, Bingham transferring to Stark all his right, title and interest in the assets of the firm, subject to the payment of the debts, but without prejudice to the plaintiff's claim to the deposit standing in his name upon the books of the firm. On the next day E. C. Stark, as E. C. Stark & Co. and in his own name, made a general assignment to the defendant for the benefit of creditors, to which was attached the transfer by Bingham to Stark of his interest in the property of such firm, which contained the reservation of the plaintiff's right to the $12,500 in question. The assignment contained no preferences, except such as were preferred by law for work, labor and services.

No part of the $12,500 was separated from the funds of the firm, except by crediting the same to Bingham upon the deposit ledger. No checks were ever drawn against it, so that at the time of the assignment to Bingham's wife it stood in his individual account as a credit of $12,500. At the time of the assignment made by E. C. Stark the firm of R. M. Bingham & Co. was largely indebted to him. While the assignment to the plaintiff purported to assign Bingham's interest in the firm of E. C. Stark & Co., as well as the deposits standing in his name on the books of the company, yet she never made any claim to any interest in the firm or to the firm assets, except to the deposit of $12,500.

The referee refused to find that the firm of E. C. Stark & Co. was insolvent from January 1, 1891, to July 14 of the same year, or that they were insolvent at any time from the year 1887 until July 13, 1891, or that R. M. Bingham & Co. was insolvent at any time from the year 1886 to July 13, 1891, or that Rinaldo M. Bingham was insolvent during that time.

Upon these facts the referee found, as conclusions of law, that the agreement of the members of the firm to divide a portion of the profits of the business in the several years mentioned, and the act of the firm in dividing such profits and crediting the same upon the deposit ledger to the individual members, subject to be drawn at any time by such individual members, was, in law, a separation of the joint assets of the firm, and made the dividends the individual property of the several members; that the $12,500 credited to R. M. Bingham became and was his individual property from the time it was credited, and he had a legal right to transfer the same to the plaintiff; that the transfer was for a good and valuable consideration, which remains unpaid, to an amount larger than the amount of such deposits, and that the claimant was entitled to receive and collect the amount thereof against the defendant as such assignee, payable out of the estate in his hands.

A careful study of the evidence has led us to the conclusion that the learned referee was justified in refusing to find that E. C. Stark & Co., or R. M. Bingham & Co., or R. M. Bingham, was insolvent at the time of the assignment to the plaintiff of the deposit in question. Therefore, in determining the validity of that assignment, it must be assumed that at the time it was made all these

parties were solvent. Assuming that E. C. Stark & Co. and Bingham were solvent when the assignment to the plaintiff was made, the question presented is whether she was entitled to recover the amount of the deposit in question against the defendant as assignee of E. C. Stark.

The appellant's contention is that the firm of E. C. Stark & Co. was insolvent, and, being insolvent, the transfer by R. M. Bingham to the plaintiff of his individual account credited upon the books of the firm was void as against the creditors of such firm. He cites, as sustaining his contention, the cases of *Ransom* v. *Van Deventer* (41 Barb. 307); *Wilson* v. *Robertson* (21 N. Y. 587); *Menagh* v. *Whitwell* (52 id. 147); *Kirby* v. *Schoonmaker* (3 Barb. Ch. 46); *Burtus* v. *Tisdall* (4 Barb. 571); *McCull* v. *Moschowitz* (10 N. Y. Civ. Proc. Rep. 140); *Hewitt* v. *Northrup* (75 N. Y. 509), and *In re Rieser* (19 Hun, 202; affd., 81 N. Y. 629).

In the *Ransom* case it was held that a division by partners, of the co-partnership assets between themselves, and the transfer of the same by the individual partners in payment of their private debts, when the partnership was insolvent, was fraudulent and void. In discussing this question, however, SMITH, J., who delivered the opinion in that case, said : " The division by solvent partners of their assets would be entirely valid, and the transfer by one partner of partnership assets thus acquired to pay his personal debts would also be entirely valid."

The *Wilson* case holds that the appropriation by an insolvent firm of partnership property to the payment of the individual debts of one partner is fraudulent and avoids the deed of assignment. In *Menagh* v. *Whitwell* it was said : " This mortgage, if such be its true construction, having been given to secure the individual debt of the partner, even if effectual as to the firm, by reason of the concurrence of all the partners giving it, would be a fraudulent misapplication of the partnership property, and void as to the creditors of the firm, under the principle of the cases of *Ransom* v. *Van Deventer* (41 Barb. 307) and *Wilson* v. *Robertson* (21 N. Y. 587), *unless the firm were solvent at the time the mortgage was given*, and sufficient property would remain, over and above that devoted by that instrument to the payment of the individual debt, to pay the debts of the firm."

In the *Kirby* case it was held that where partnership property is placed in the hands of an assignee to make distribution thereof, it is administered in courts of equity by applying the co-partnership funds, in the first place, to the payment of the debts of the firm, and the individual funds of the several co-partners to pay their individual debts respectively before paying joint debts out of the same ; but, where the co-partners are administering their own funds, the co-partnership creditors have no specific or preferable lien upon the joint funds, nor have individual creditors any lien or priority of claim upon the separate property of their debtors. In the opinion in that case it is said : " The co-partners certainly have the right to dissolve the partnership and divide the property of the firm between them, provided there is no intention of delaying or hindering their creditors in the collection of debts, thereby leaving their joint, as well as their separate creditors, to compete for a preference in payment." The chancellor adds : " The case would have been entirely different if co-partners, who were insolvent, and unable to pay the debts of the firm, either out of their co-partnership effects or of their individual property, had made an assignment of the property of both to pay the individual debt of one of the co-partners only."

In *Burtus* v. *Tisdall* it was held that members of an insolvent partnership could not, by mutual consent, divide the partnership funds between themselves, so as to enable each member to apply the part allotted to him, in a preferred payment of his separate debts, leaving joint debts unsatisfied. In the opinion in that case it was said : "It was contended on the argument,  *  *  *  that co-partners have a right to appropriate, by mutual consent, their joint property to the payment of debts owing by them individually, leaving those of the partnership unsatisfied. That may be true where the firm is solvent, and sufficient is left to satisfy the joint debts."

The *McCall* case was an action to dissolve a co-partnership and for an accounting between the partners, and it was there said : " It is a fundamental rule of law, needing the citation of no authorities, that co-partnership assets must be first applied to payment of co-partnership debts."

All that was said in the *Hewitt* case that relates to this subject was that the equitable rule for the administration of the property of persons who are members of an insolvent firm, and who own firm

property and individual property, and owe firm as well as individual debts, is that the firm creditors are entitled to be first paid out of the firm property, and individual creditors to be paid out of individual property.

In *In re Rieser*, where a firm was indebted to one of its partners for goods sold to it by him, and became insolvent and made a general assignment, and the partner also became insolvent and made a general assignment, and upon an accounting the assignee of the partner was allowed to prove the amount due from the firm to his assignee as a firm debt, and to share in the distribution of the assets of the firm with the other firm creditors, it was held that this was erroneous; that such debt could be paid only after all the other creditors of the co-partnership had been fully paid.

An examination of these cases renders it manifest that they have no application to the question under consideration, as in those cases the co-partnerships were insolvent at the time when the transactions occurred which were the subject of investigation. In this case, as we have already seen, at the time of the assignment of the individual credit of R. M. Bingham to the plaintiff the firm and parties were solvent. Hence, we find nothing in any of the cases cited which would, under the circumstances of this case, justify us in holding that the transfer to the plaintiff was invalid. Those cases recognize the doctrine that a division of their assets by solvent partners is valid, and that a transfer by one partner of the partnership assets thus acquired to pay his personal debts would be entirely valid.

The marginal note in the case of *Crosby* v. *Nichols* (3 Bosw. 450) is as follows: "When the members of a firm, by agreement among themselves, make an actual division between them of part of the firm's assets, and allot to each, as his own property, specific portions thereof, and the division thus made is assented to and acted upon by all the partners, the title to the part so allotted to each becomes thereby his exclusive individual property. If one partner receive from a third person payment of a debt owing by him to the firm, which has been so allotted to his co-partner, the latter may maintain an action against him to recover the amount so received." In 1 Lindley on Partnership (5th Eng. ed. 334) it is said: "It is compe-

tent for partners, by agreement amongst themselves, to convert that which was partnership property into the separate property of an individual partner or *vice versa*. And the nature of the property may be thus altered by any agreement to that effect." In 2 Lawson's Rights, Remedies and Practice (§ 663) it is said: "Partners may at any time, by agreement between themselves, convert partnership property into the several property of any one or more of the partners, or the several property of any partner into partnership property. Such conversion, if made in good faith, is effectual not only as between the partners, but as against creditors of either the partners or of the firm."

The doctrine of the case of *First Nat. Bank* v. *Wood* (128 N. Y. 35) seems to be applicable to, and well nigh conclusive upon, the question of the validity of the division of profits or assets of a firm and a transfer by one partner of the partnership assets thus acquired to pay his personal debts. In that case where, in 1876, upon the settlement of accounts between the firm of O. K. Wood & Co., which was composed of three members, and the firm of V. A. Wood & Co., composed of two members, who were also members of the former firm, a sum was found due the latter firm from the former. In the settlement it was agreed that O. K. Wood & Co. should give its notes to each of the members of V. A. Wood & Co. for one-half the amount. At their request the note to which each was entitled was made payable to his wife. Each received his note and delivered it to his wife as a gift, and it was thereafter retained by her. O. K. Wood & Co. paid interest on the notes each year up to 1884, by giving the holders its notes therefor. In May of that year it became insolvent, and made an assignment for the benefit of creditors, preferring the wives to the amount of the original notes and those given for interest. In an action by a judgment creditor of O. K. Wood & Co., a portion of whose claim accrued in 1879, to set aside said assignment as fraudulent because of said preferences, it was held that the action was not maintainable; that the payees named in the notes became absolute owners upon the delivery to them to the same extent as if they had paid value, and that such title and consequent right of recovery were in no way diminished or affected by the subsequent dealings or complications of the two firms.

In delivering the opinion in that case PECKHAM, J., said: "The

result of the action of the parties was simply a transfer of the firm debt to the respective wives. At this time the firm was solvent. The transaction was, in substance, the same as if the makers had made the notes payable to the two members of the other firm, and had thus delivered them to such members, and those members had then indorsed and delivered them to their wives as free and voluntary gifts. If the makers of the notes had thus delivered them to ·the other partners as payees the title to the debt, of which the notes were evidence, would have then gone to the payees, and if the payees had transferred the notes by gift and delivery to their wives, the title to that debt would have been also transferred with and followed the notes, and would have remained one-half with each of such wives. * * *. The debt was an honest one ; it was due, and the firm that owed it was largely solvent and recognized its obligation and gave the notes. It is admitted that the donees might, at that time, have maintained an action against the makers on the notes and recovered thereon. If so, it could only be upon the ground that they had become the owners of the notes. They became such owners only by virtue of a voluntary gift accompanied by an immediate and unconditional delivery. This, indeed, did give to the donees a perfect title and absolute ownership to and in the notes, as there were then no equities existing between the original parties. The notes represented the original debt. How is it then that such ownership, although absolute at the time of the transfer and giving the holders of the notes a right of action, shall, nevertheless, if not acted on by collecting the money, be liable at any future time to be changed, and, indeed, extinguished by matters subsequently arising between those original parties? * * * In this case the debt was in its origin a firm debt, and the firm gave a written obligation to pay it. By a legal transfer the debt has become the property of the wives of the then creditor members of the firm, and they became such owners at a time when there was no defense to the notes as between the original parties to them. The plaintiff in answer to these views claims that the notes should be treated in the same way as if they represented advances made by the partners to the firm, and he insists that they can be paid only upon an adjustment of the partnership accounts at the time of the dissolution of the partnership, and until then constitute no indebtedness. The truth

is the parties made no advances to the firm, and the notes cannot represent a substance which never existed.   The makers of the notes owed the two members the sum represented by the notes, and that sum was a proper partnership debt.   A partner who simply makes an advance to the firm, relying upon an implied promise of the firm to repay, occupies a totally different attitude from one member of a firm who has had an accounting with the firm, and upon that accounting has been found to be its creditor, and who has then taken from the firm a written promise to pay the debt thus found due him.   In the first case the promise, which is implied in favor of the partner who makes the advances, is that the firm will repay such sum as may be found due the member upon an accounting, while in the other case the express promise excludes any implication whatever, and may be enforced according to its terms.   The result is that in some cases the assignee of the debt can subsequently maintain an action thereon where the assignor, at the time of the commencement of the action, could not.   This is not at all inconsistent with the cases which hold the principle that no one deriving under the partner (assignor) can be in a better position than such partner, that is, a better position than the partner was when he assigned. *   *   *   In this case, if the members of the V. A. Wood & Co. firm had kept the notes in their own possession without assignment until the O. K. Wood & Co. firm became insolvent, and had then, by gift, transferred the notes to their wives, the latter would have taken simply the right which their husbands had, and, as they could not, at the time of the transfer, have maintained an action upon the notes without an accounting and the preference of other firm debts, it would follow that their voluntary transferees could not.   So the question is really reduced to the point as to what was the right of the transferee at the very moment of transfer.   If at that time the notes could have been sued upon by the transferrer, that right went to the transferee, and could not, therefore, be altered by subsequent matters between the original parties."   We have thus quoted from the opinion in that case at considerable length, for the reason that the principles enunciated and the reasoning of the court seem to be quite pertinent to if not decisive of the question under consideration.   We see no reason why, when the profits of a firm are, by agreement, divided between the partners and credited to each upon

Hun.]       Fourth Department, November Term, 1894.

the books of the company, it does not work a separation from the firm assets of the portion so divided and pass the title thereto as completely and effectually as it would if a note or certificate of deposit was given therefor by and in the name of the firm.

In the case at bar the debt of the firm of E. C. Stark & Co. to R. M. Bingham was an honest one. Profits had been earned in the business to an extent that rendered it entirely proper for the parties to divide a portion of them between the individual members of the firm. This was done. After the division, and after an individual credit was given to each, it formed between the parties a valid debt from the firm to each of the members for the amount of the divided profits credited to him. At that time the firm was solvent, and recognized the propriety of dividing a portion of the profits of the business between its members, and its obligation to pay each his individual share of the profits thus divided. If immediately after such division Bingham had commenced an action to recover his portion of such divided profits, there is little doubt, we think, but that he could have recovered. (*Cole* v. *Reynolds*, 18 N. Y. 74; *Bank of B. N. A.* v. *Delafield*, 126 id. 410.) So, too, at the time when the transfer was made by Bingham to his wife, the action might have been maintained, as the firm was then solvent. This being so, it must follow that upon the assignment to the plaintiff she acquired a right to maintain such an action. There was no advance made by Bingham to the firm of such share; on the contrary, the firm was to pay him the amount of it. The firm was indebted to him in the sum of $12,500 for such divided profits. That debt he assigned to his wife to secure valid debts which she held against him and the firm of which he was a member. Obviously, at the time of the assignment, she might have maintained an action against the firm of E. C. Stark & Co. to recover the amount of the divided profits thus assigned, without any accounting with the firm. She having at that time acquired this right, it could not be altered or changed by any subsequent dealings or complications arising between her husband and the firm of E. C. Stark & Co., or between the members of such firm. We are of the opinion that when the profits of the business of E. C. Stark & Co. were, by agreement of the partners, divided and each of the partners was credited with his share, it became a debt against the firm, which

FOURTH DEPARTMENT, NOVEMBER TERM, 1894.          [Vol. 82.

could have been enforced so long as the partnership remained solvent, and that either could transfer the same, and his transferee could maintain an action and recover the amount thus credited.

From these considerations, it follows that the judgment appealed from should be affirmed, unless the referee committed some error in the admission or rejection of evidence which would require a reversal.

We have carefully examined each of the appellant's exceptions to the rulings of the referee as to the admission of evidence, but have found none that we think sufficient to require us to interfere with the judgment, and, therefore, we are of the opinion that it should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order affirmed, with costs.