## RISING v. SEBRING et al.

### (Steuben County Court. May 17, 1907.)

1. PARTNERSHIP—MUTUAL RIGHTS AND LIABILITIES—ACTIONS—GROUNDS—PRE-
VIOUS ACCOUNTING.

A partner was given a duebill, not intended to be paid at that time, for labor done for the firm under a contract made before he became a member. As a member he sold property belonging to the firm and received the pro-ceeds thereof, but did not turn it over. He used some of the firm property for personal purposes, and had promised that whatever was due the company should be applied on the duebill, but no settlement was made. *Held*, that he could not sue his copartners on the duebill without an ac-counting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 157, 160.]

2. ASSIGNMENTS—EFFECT—BONA FIDE ASSIGNEE.

Where the wife took an assignment of a duebill from her husband for the purpose of suing on it, and paid a consideration of only $1, she is in no better position than he to maintain an action on it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, § 177.]

3. COURTS—CITY COURTS—PRACTICE—APPEAL—PAYMENT OF COSTS IN LOWER
COURT.

The charter of Corning (Laws 1905, p. 290, c. 142) creates an enlarged justice's court for the city of Corning, under the title of a City Court, which took the place of the formerly existing justices' courts. Section 97 there-of provides for increased fees to be paid to the judge as court fees, and also fees for a stenographer. Section 98 allows an attorney fee to the success-ful party, if represented by a registered attorney, in addition to other fees, and the disbursements of the successful party as allowed in an ordinary justice's court. Section 100 provides that the costs awarded a party un-der section 98 shall not be included in the costs required to perfect an ap-peal under Code Civ. Proc. § 3047, which requires all costs included in the judgment, and $2 for making the return, to be paid at the time of serving notice of appeal. *Held*, that all costs included in a judgment of the Corn-ing City Court, except the attorney fee, in addition to $2 for making the return, must be paid at the time of serving notice of appeal from that court.

Appeal from City Court of Corning.

Action by Mary D. Rising against James O. Sebring and another. From a judgment for plaintiff, defendants appeal. Reversed.

James O. Sebring, for appellants.
Francis C. Wood, for respondent.

BURRELL, J. This action was brought in the Corning City Court, May 18, 1906, by the plaintiff, Mary D. Rising, against James O. Se-bring, Edwin J. Carpenter, Charles Ellis, Martha Ellis, Amanda Ellis, Willis S. Cobb, and Delmar C. Rising, as defendants, to recover on a duebill given by the Pinewood Company on May 8, 1903, to the de-fendant Delmar C. Rising, for $330.70 and interest. The summons was served on the defendants Edwin J. Carpenter and James O. Se-bring only, and the judgment in the City Court was rendered in form against all of the above-mentioned defendants named in the summons. The said defendants Edwin J. Carpenter and James O. Sebring, being personally served with the summons, appeared and defended the action, and from the judgment rendered against them appeal to this court.

It was alleged by the plaintiff that the persons mentioned in the summons as defendants were members of a copartnership, known as the "Pinewood Company," and that the defendant Edwin J. Carpenter was the secretary of the said company. It appears from the evidence that at the time the duebill was given by the Pinewood Company to the defendant Delmar C. Rising, he was a member of the Pinewood Company; that before he became a member of said copartnership, and on the 28th day of August, 1902, he, in company with a man by the name of Edward Vosburg, entered into a contract with the said Pinewood Company for the cutting of logs and converting the same into lumber, lath, shingles, etc., according to the direction of the said Pinewood Company; and that before the completion of said contract, and on or about December 1, 1902, one of the parties to the said contract, the said Delmar C. Rising, became a member of said Pinewood Company. Mr. Rising testifies that the members of the firm at that time were Martha Ellis, James O. Sebring, W. S. Cobb, E. J. Carpenter, and himself. It appears that subsequently, and on or about May 8, 1903, the said Pinewood Company settled with said Vosburg and Rising for the amounts due them on said contract so entered into on August 28, 1902, between them and the said Pinewood Company and gave the said Vosburg their note for the amount due him, said defendant Rising signing said note as one of the copartnership firm; and at the same time the said Pinewood Company settled with the defendant Delmar C. Rising for the amount going to him by virtue of said contract, and gave to him a duebill therefor, as follows:

"Corning, May 8, 1903.

"Due D. C. Rising $330.70, three hundred and thirty dollars $70/100$, with use.

"The Pinewood Co.,
"Edwin J. Carpenter, Treas."

The said Delmar C. Rising continued to be a member of the said Pinewood Company, lived on the property, and did work thereon in various ways, such as drawing wood, cutting brush, and work on the pavillion built on the premises. He also sold a quantity of wood and lumber, the property of the company, for which he received payment and had not turned the avails over to the company, and other matters, which transactions covered a period of two or more years, so that there remained an unsettled account between the members of the Pinewood Company and their fellow copartner, Delmar C. Rising; none of the copartnership matters having been adjusted by the duebill. During the time that Delmar C. Rising was a member of the company, he and the members of the company had had several meetings to adjust their accounts, and had failed at any time to come to any definite agreement, and no accounting was ever had, so that the rights and obligations of the various members of the firm were left unsettled and unadjusted; and on the 24th day of March, 1906, the said Delmar C. Rising assigned his cause of action on said duebill to this pla'ntiff, who is the wife of the defendant Delmar C. Rising. The assignment is as follows:

"March 24, 1906.

"For value received I hereby sell, assign, and transfer to Mary D. Rising my claim and cause of action against James O. Sebring and others, arising out of the Sebring Park Co. matter.

"D. C. Rising."

It is urged very strongly by the appellants that there can be no recovery in this action in the court below, or in any action, until an accounting has been had between the members of the copartnership and a balance struck; the appellant having taken that ground in the court below in his various motions and objections before the city judge.

The question arises: What was the right of Delmar C. Rising at the time of making this assignment to the plaintiff? While the assignment states the words, "For value received," yet the evidence shows that the consideration paid was the sum of $1, and it appears further from the evidence that the assignment was really a gift to the plaintiff, and made for the purpose of having the plaintiff bring this action. The evidence discloses the fact that there was a question as to whether Delmar C. Rising could bring the action, and, as he testifies, "it was thought to be the better way" to thus assign it to his wife. I do not think that Rising himself could have maintained this action against his copartners; and, if he could not, then he certainly could not confer on the plaintiff, his assignee, any greater power than he himself possessed. In other words, it was merely transferred to the plaintiff as a matter of form. "People who receive gifts of negotiable securities take them subject to all the equities then existing between the original parties." F. N. Bank v. Wood et al., 128 N. Y. 44, 27 N. E. 1020.

The respondent urges that, at the time of the giving of the duebill to Rising by the firm, that was a full adjustment of all transactions between them; that the amount due Rising and Vosburg was ascertained and stated, and a written promise to pay executed and delivered to them, respectively; and that it thus became a promise and obligation of the partnership to pay a certain sum, arising out of an independent and separate transaction, thereby fulfilling all of the requirements of the decisions which authorize an action at law upon such liability; and, while subsequent transactions might give rise to a set-off or counterclaim, that it would not go to the validity of the promise itself. I cannot agree with that contention in the case at bar. In the first place, there was no settlement and adjustment by the copartners with their fellow copartner, Rising, only so far as it related to what was coming to him as his proceeds of that contract, entered into before he became a member of the firm. Before the completion of that contract, he himself became a member of the firm, and as such was subject to its losses, liabilities, and obligations, as well as entitled to his share of the gains. Indeed, the evidence discloses that an understanding was had between Rising and his fellow copartners that the duebill thus given him was not to be paid at that time. The effect of the giving of the duebill to him was simply to give him evidence of the amount coming to him on the old contract, which he entered into before he became a member of the firm; and he continues to hold the duebill, and continues to be a member of the firm, and does various things

by disposing of the wood, lumber, etc., before mentioned, the property of the firm, and collecting money therefor, which he did not turn over to the company, as the evidence shows. He testified that he did not know how many cords of wood he sold, but did not think he sold as much as 631 cords, but sold a lot of it; would not swear positively that he did not sell and receive the money for that amount, for the reason that he did not remember; that he used personally some of the lumber belonging to the firm to build him a house on his property; and further testified as follows, being questioned by Mr. Sebring:

"Q. When you used this lumber and collected the moneys, which you retained, did you intend they should apply on this duebill? A. I intended that when we had the accounting, or when we settled up, if there was anything due you and the other members of the firm, I would settle it. Q. Was not that talk between you and me and Dr. Carpenter, that whatever you did owe the firm for what you had received should apply on this duebill? A. I don't remember talking with you; but I told Dr. Carpenter that, of course, whatever was due you would be applied on this duebill."

The evidence thus shows that there were offsets against this duebill to a greater or less amount, and on one occasion, on looking matters over between the parties, Rising was brought in debt to the company to about $90. It also shows sufficiently that the equities existing against the duebill can only be determined by an accounting between the members of this firm, and such an accounting will show conclusively whether Delmar C. Rising owes the company, or whether the company owes him. I cannot see how Delmar C. Rising was in a position to maintain this action under the circumstances, and, if he could not, surely his assignee could not. No one member of this firm was liable separately and alone on this duebill, and yet here is a judgment standing against two members of this firm for the whole amount; the others, for some reason which does not appear, not being served with the summons. Thus an execution could be issued and the judgment collected out of the property of these two defendants, who would thus be made to pay the full amount, notwithstanding the fact that on an accounting between the parties the company might owe nothing on the duebill. I do not believe the decisions contemplate any such action as this, nor is the situation changed by Delmar C. Rising selling his interest in the company to the defendant Sebring, as the evidence shows that Sebring did not assume all the debts of the company, but that he did assume Mr. Rising's proportion of the liability for the payment of company debts. That did not change the situation at all as to moneys owed the company by Rising. The plaintiff was not entitled to recover in this action.

There are several other reasons urged by the appellant why the judgment should be reversed; but, as the judgment must be reversed for the reasons above stated, it is unnecessary to consider them.

There is another question submitted to me by the consent of counsel on both sides on the argument, which involves the construction of the charter of the city of Corning relating to appeals from the Corning City Court. It appears from the return made herein that the appellants have not paid all the costs included in the judgment, but

have only paid $2 for the making of the return on appeal and the costs and fees required to be paid by the city charter for the stenographer, $7.80, or the sum of $9.80 in all. The appellants contend that they are not obliged to pay all of the costs included in the judgment rendered by the City Court in the same manner as is required in an appeal from a Justice's Court.

The subject of costs in the Corning City Court is regulated by sections 97 to 100 of chapter 142, p. 290, of the Laws of 1905; the City Court created by that chapter taking the place of the Justice's Court formerly existing within the city. Section 93 provides that:

"The processes and all mandates of the City Court the service and enforcement thereof, the proceedings thereunder, the practice and procedure in said court, and before the city judge, and the jurisdiction of said court of persons and subject-matter, shall be the same as in courts of justices of the peace in towns, except as otherwise provided in this act, and all provisions of law applicable to justices of the peace in towns and the courts held by them and the procedings had before them, and to their official acts, duties and powers, shall apply to the City Court and the judge thereof, except as qualified by this act. * * * For the purpose of determining the jurisdiction of such city Court, except as the same is increased or extended or modified by this act, the city shall be regarded as a town." 

Section 97 reads as follows:

"There shall be paid to the said judge the following sums only, as court fees in a civil action; upon issuing a summons, fifty cents; upon the return day, if judgment is taken by default, or if issue is joined (1) if such judgment is rendered, or the amount demanded in the complaint is for a sum less than twenty-five dollars, fifty cents; (2) if judgment is rendered or the amount demanded in the complaint is for the sum of twenty-five dollars or over, one dollar; for a trial of an action by the court, if issue is joined, one dollar and fifty cents; for the trial of an action by a jury, two dollars and fifty cents, in addition to the fees allowed by law in courts of justices of the peace for towns for issuing a venire, service thereof and jury fees; for each transcript or execution, twenty-five cents; for making a return upon an appeal from a judgment or order, two dollars; and in addition thereto there shall be paid, before the return is filed with the appellate court, six cents for each folio of one hundred words contained in said return in excess of fifty folios, which shall belong and be paid to the official stenographer for making such return. * * *"

Section 98 reads as follows:

"In all civil actions and proceedings in the court, the successful party shall tax and recover all fees, including jury, constable, stenographer, and witness fees, paid by him, together with all reasonable and proper disbursements, not exceeding the sum allowed by chapter 19 of the Code of Civil Procedure, actually and necessarily made by him in the prosecution or defense of the action or proceeding. In addition thereto, there shall be allowed the successful party in an action in which a defense shall have been interposed, in case he has appeared by a registered attorney and not otherwise; if the plaintiff, ten per centum of the amount recovered or the value of the chattels as determined in the trial and fixed by the judgment, not to exceed fifteen dollars; if the defendant is the successful party, the amount to be recovered as costs shall be determined by the amount demanded in the complaint or stated in the complaint to be the value of the chattels, and shall be ten per centum thereof, not to exceed fifteen dollars."

Section 100 reads as follows:

"Appeals may be taken from any judgment rendered in said court to the County Court of Steuben county as prescribed in title eight of chapter 19 of the Code of Civil Procedure. * * * Costs required to be paid to perfect an ap-

peal under section 3047 of the Code of Civil Procedure shall not include the costs awarded a party under section 98 of this title."

Section 3047 of the Code of Civil Procedure requires all costs included in the judgment to be paid at the time of serving notice of appeal.

It seems to me that the intention was to create an enlarged Justice's Court under the title of a City Court, slightly increasing the fees to be paid to the city judge as court fees, with the addition, also, of fees for a stenographer, and to allow a certain sum to be taxed as attorney fees to the successful party if he appeared by a registered attorney. These fees are to be taxed as costs in a judgment as though rendered in a Justice's Court. Section 98 states plainly what shall be taxed in the judgment, and not exceeding the sum allowed by chapter 19 of the Code of Civil Procedure, which chapter applies to the practice and proceedings generally in a Justice's Court, section 100 plainly states that the "costs" allowed by section 98 as attorney's costs shall not be part of the costs required to be paid to perfect an appeal under section 3047 of the Code, and also very plainly states that appeals may be taken as prescribed by the Code; and as section 3047 of the Code requires all costs included in the judgment to be paid at the time of the services of the notice of appeal, and the sum of $2 for the return, it follows that, in an appeal from the Corning City Court, all costs included in the judgment (less the percentage allowed under section 98 for attorney's fees) must be paid at the time of serving the notice of appeal, and the sum of $2 as the fee of the city judge for making the return.

By the conditions under which this question was submitted to me the appellant may supply omission of nonpayment of costs by paying to the city judge the balance of costs which he failed to pay, and which is included in the judgment, and, when so paid, the judgment of the City Court is reversed, with costs.

Judgment is ordered accordingly.