Austin W. Lord et al., Respondents, v. Washington Hull, Appellant, and Kenneth M. Murchison, Jr., Respondent

1. Partnership — When Action for Accounting Between Partners Not Involving a Dissolution of the Firm Cannot Be Maintained. A court of equity will not take cognizance of an action for an accounting as a mere incident to the settlement of a solitary matter in dispute between partners when it is not vital to either party or to the business, and dissolution is not sought. The authorities upon the subject collated and reviewed.

2. Same. Where a dispute has arisen between two copartners and a third member of the firm as to whether a certain contract with a third party was binding upon the firm or only upon the two copartners, the latter cannot maintain an action, to which the third party was subsequently made a defendant by an order from which no appeal was taken, against the third partner for an accounting as to all partnership affairs, and an adjudication of the rights and obligations of the parties under the copartnership agreement and under the contract in question, where no dissolution of the copartnership is asked for and there is no claim that the third partner was insolvent, or that he had suppressed any fact, or had made secret profits, or had been guilty of bad conduct, or that the books had not been properly kept, or that the plaintiffs had been denied access to the books, and it appears upon the trial that there was nothing to have any accounting about except the amount involved in the disputed contract.

Lord v. Hull, 80 App, Div. 194, reversed.

(Argued February 12, 1904; decided March 4, 1904.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 25, 1903, affirming a judgment in favor of plaintiffs and

defendant Murchison entered upon a decision of the court on trial at Special Term.

It is alleged in the complaint that in September, 1894, the plaintiffs and the defendant Hull formed a copartnership to carry on business as architects in the city of New York, at first for a definite period, but finally until certain work was finished, and that the time for the termination thereof was uncertain owing to the large number of unfinished contracts on hand. The powers, rights and obligations of the copartners were in all respects equal. On the 18th of February, 1896, a written agreement was made in the name of the firm with Kenneth M. Murchison, Jr., containing a promise " to pay him ten per cent. of the gross commissions for the work on the residence of William A. Clark," not yet completed. The rest of the complaint, Murchison not having been a party when it was drawn, is as follows : " That a disagreement has arisen between the plaintiffs and defendant as to the payments which have been and are still to be made to the said Kenneth M. Murchison, Jr., and as to the obligations of the copartnership to the said Murchison, Jr., under the contract entered into by said copartners and said Murchison, being the agreement of February 18th, 1896 (Schedule B hereto annexed), hereinbefore set forth ; that the defendant has withdrawn from the funds of the copartnership and has appropriated to his own use the sum of $945, which was a sum largely in excess of any and all sums to which he was entitled at the time of such withdrawal, and threatens to withdraw from the funds of the said copartnership from time to time hereafter such sum or sums as he may deem himself entitled to irrespective of the rights of the plaintiffs ; that the plaintiffs do not desire to dissolve the copartnership existing between them and the defendant, for the reason that the plaintiffs believe that the contracts entered into between such copartnership and William A. Clark, the owner of one of the works set set forth in schedule ' C ' hereto annexed and yet incomplete, require the exercise of the professional skill and ability of all the members of the said firm, which could not be secured

upon a dissolution of the said copartnership, and that loss and damage would be sustained by the plaintiffs if such contracts were broken by the dissolution of said copartnership; that the plaintiffs are without an adequate remedy at law." There was no allegation that Hull was insolvent, or that there was any occasion for an accounting, except with reference to the Murchison contract.

The relief demanded was an accounting as to all copartnership affairs to date and an adjudication of the rights and obligations of the parties under their copartnership agreement and under the contract with Murchison. There was also a prayer for general relief, but none for an injunction, either temporary or permanent.

The defendant Hull alleged in his answer that the agreement with Murchison was made without authority and was not binding on the firm; that the plaintiffs had unlawfully paid him thereon large sums of money out of the funds of the firm, and that they threaten to continue such payments.

A few days before the action was tried Murchison moved at Special Term, on notice to the parties, to be made a party defendant, with leave to serve an answer upon both the plaintiffs and the defendant. The motion, although opposed, was granted, and no one appealed from the order. The answer of Murchison, served on all the parties, after certain denials, set forth, " by way of an equitable counterclaim," the agreement between himself and the firm, and alleged that the firm owed him the sum of $2,100 and upwards thereon. He asked for an accounting to ascertain the amount received by the firm as commissions from said Clark, and for judgment against the plaintiffs and the defendant Hull for the amount found due him, with other relief.

The last set of copartnership articles provided " that upon completion of the works above mentioned a true and final accounting shall be made by the parties to this agreement each to the others, and all the property of the firm   *   *   * shall be equally divided between them."

Upon the trial it appeared from the testimony of the plain-

tiffs that there was " nothing to have an accounting about
except Mr. Murchison's share of those commissions."

The trial judge found the facts as alleged by the plaintiffs
and the defendant Murchison, and the decree entered held
the Murchison agreement valid and binding upon the firm,
interpreted its meaning in accordance with their contention,
and awarded judgment in favor of the plaintiffs and against
the defendant Hull for $1,415.27, with costs, and in favor of
the defendant Murchison against the plaintiffs and the defend-
ant Hull, for the sum of $3,000, besides costs. Upon appeal
by Hull to the Appellate Division the judgment was in all
things affirmed, two of the justices dissenting, and he now
comes to this court.

*John Henry Hull* for appellant. The complaint should
have been dismissed upon the ground that no accounting was
shown to be either necessary or possible. (2 Lindley on Part.
784; *Forman* v. *Homfray*, 2 V. & B. 329; *Kimball* v.
*White*, 2 Y. & C. 15; *Loscombe* v. *Russell*, 4 Sim. 8; 1 Col-
lyer on Part. [6th ed.] § 282; *Crossley* v. *Tuylor*, 83 Ind.
338; *Lang* v. *Oppenheim*, 96 Ind. 47; *Page* v. *Thompson*,
33 Ind. 137.)

*J. Albert Lane* for plaintiffs, respondents. This action, for
an accounting between partners and for the interpretation of
the written agreements under which they are acting, can be
maintained. (Lindley on Part. 496; *Sanger* v. *French*, 157
N. Y. 213.)

*Henry B. Culver* for defendant, respondent. The motion
to dismiss the complaint upon the ground that no facts had
been shown warranting an action for an accounting and for
the striking out of the answer of Murchison upon the same
ground, was properly denied. (*Sanger* v. *French*, 157 N. Y.
213; Lindley on Part. 478, 492, 494, 495; *Fairthorn* v.
*Weston*, 3 Hare, 387; *Richards* v. *Davies*, 2 R. & M. 347;
*Somerby* v. *Buntin*, 118 Mass. 279; *Leavitt* v. *W. L. & I.
Co.*, 54 Fed. Rep. 439.)

Vann, J. This action was brought by two copartners against the third for an accounting without a dissolution, and it is not surprising that a challenge is interposed to the jurisdiction of the court. The contract of copartnership has existed as long as the common law, and a vast amount of business has been transacted by persons working together under this relation. The law upon the subject is founded on the custom of merchants, who have thus in effect made their own law, yet we find no well-considered case which approves of such an action as the one now before us. While the novelty of an action is by no means conclusive against it, still it is suggestive when the history of the law relating to the subject shows many occasions and few efforts.

The general rule is that a court of equity, in a suit by one partner against another, will not interfere in matters of internal regulation, or except with a view to dissolve the partnership and by a final decree to adjust all its affairs. (Story on Partnership, § 229; Lindley, 567; Gow, 114; Parsons, § 206; Bates, § 910; Collier, § 236.) It is not its office " to enter into a consideration of mere partnership squabbles " ( *Wray* v. *Hutchinson,* 2 Mylne & Keen, 235, 238) ; or " on every occasion to take the management of every play-house and brewhouse." (*Carlen* v. *Drury,* 1 Vesey & B. 153, 158.) If the members of a firm cannot agree as to the method of conducting their business, the courts will not attempt to conduct it for them. Aside from the inconvenience of constant interference, as litigation is apt to breed hard feelings, easy appeals to the courts to settle the differences of a going concern would tend to do away with mutual forbearance, foment discord and lead to dissolution. It is to the interest of the law of partnership that frequent resort to the courts by copartners should not be encouraged and they should realize that, as a rule, they must settle their own differences or go out of business. As a learned writer has said : " A partner, who is driven to a court of equity as the only means by which he can get an accounting from his copartners, may be supposed to be in a position which will be benefited by a dissolution ; in other

words, such a partnership as that ought to be dissolved."
(Parsons on Partnership, [4th ed.], § 206.)

" If a continuance of the partnership is contemplated," as
another commentator has said, " or if an accounting of only
part of the partnership concerns is allowed, no complete jus-
tice can be done between the partners, and the fluctuations of
a continuing business will render the accounting which is cor-
rect to-day, incorrect to-morrow, and to entertain such bills on
behalf of a partner would involve the court in incessant liti-
gation, foment disputes, and needlessly drag partners not in
fault before the public tribunals." (2 Bates on Partnership,
§ 910.) Judge Story declared that " a mere fugitive, tempo-
rary breach, involving no serious evils or mischief, and not
endangering the future success and operations of the partner-
ship, will, therefore, not constitute any case for equitable
relief. * * * It is very certain that, pending the partner-
ship, courts of equity will not interfere to settle accounts and
set right the balance between the partners, but await the
regular winding up of the concern." (Story on Partnership,
§§ 225, 229.)

While a forced accounting without a dissolution is not
impossible, it is by no means a matter of course, for facts must
be alleged and proved showing that it is essential to the con-
tinuance of the business, or that some special and unusual
reason exists to make it necessary. Thus, Mr. Lindley, upon
whom reliance was placed by the courts below, mentions
three classes of cases as exceptions to the general rule :

" 1. Where one partner has sought to withhold from his
copartner the profits arising from some secret transaction ;

" 2. Where the partnership is for a term of years still
unexpired, and one partner has sought to exclude or expel his
copartner or drive him to a dissolution ;

" 3. Where the partnership has proved a failure, and the
partners are too numerous to be made parties to the action
and a limited account will result in justice to them all."

The plaintiffs claim that this case belongs to the second
class, and the courts below have so held, but, as we think, it

does not come under any head of Mr. Lindley's classification, which is correct as far as it goes, and it goes as far in the direction of the plaintiffs' theory as any just classification that can be made.

There is neither allegation nor evidence that Hull tried to exclude or expel the plaintiffs, or to drive them to a dissolution, or that he did anything in bad faith or with an ulterior purpose. The controversy was confined to one point of difference, the Murchison contract, which was a matter of internal regulation. There was no dispute about anything else. The plaintiffs claimed that the contract bound the firm, and that it included all work done or to be done for Mr. Clark, while Hull claimed that it did not bind the firm, and that if it did, it embraced only a part of that work. There was no difference in the computation of balances, or claim that the articles had been violated by either side, except with reference to that contract. The plaintiffs insisted that Hull had drawn out more than his share of the profits, because he drew one-third of the income without leaving one-third of the part going to Murchison, and that thus there was a balance against him. Hull claimed that the plaintiffs in paying anything to Murchison wasted the assets of the firm, and thus there was a balance against them. When the interlocutory judgment was made, the parties at once stipulated the respective balances on the basis of that decree, and thus obviated a reference so that final judgment was entered without delay. Neither party desired an accounting, except as an excuse to sustain or defeat the Murchison contract. Exclusion from a small portion of the profits, paid or withheld in good faith on account of that contract, was not exclusion from the affairs of the firm, yet an accounting was sought only as a means of settling the dispute over that particular subject, which related simply to a detail in the management of the business. No discovery was asked for. There was no claim that Hull was insolvent, or that he had suppressed any fact, or had made secret profits, or had been guilty of bad conduct, or that the books had not been properly kept, or that the plaintiffs had

been denied access to the books. There was no evidence that any partner had refused to give an account of all moneys received by him, or that there was error or omission of any kind in the accounts of the firm, except as limited to the Murchison agreement. It was easy to test the validity of that contract by simply withholding payment, forcing Murchison to sue and raising the question by answer. That was not an equitable, but a legal question. Murchison's claim did not differ from that of any firm creditor, except that the partners were at odds over its validity. "No action can be maintained by one partner against the other in respect to particular items of account pertaining to the partnership business." (*Thompson* v. *Lowe*, 111 Ind. 274.) An accounting without a dissolution has never been allowed under the circumstances of this case by any court in this country or in England, so far as we can learn from the authorities cited by counsel or discovered by ourselves. A brief review of the leading cases will show that the principle upon which they rest has no application to the facts of the case before us.

In *Fairthorne* v. *Weston* (3 Hare's Ch. R. 387) the plaintiff bought into the business of an attorney, paying seven hundred pounds down and agreeing to pay seven hundred more at the end of five years, when the defendant was to retire and the business was to belong to the plaintiff. During the five years the parties were to be copartners, sharing the profits and expenses equally. After a while the defendant, for the fraudulent purpose of getting rid of his contract, received money and refused to account for it, excluded the plaintiff from all knowledge and control over the business, used insulting language toward him and violated the copartnership agreement in other ways and all in order to bring about a dissolution. A bill filed for an accounting, without a dissolution, was sustained upon the ground that the defendant was violating the contract in order to compel the plaintiff to submit to a dissolution upon very injurious terms and that the court had power to support as well as dissolve a partnership.

In *Richards* v. *Davies* (2 Russell & M. 347) a copartnership for a long term had not expired and the acting partner excluded the others "from the means of ascertaining the state of the partnership affairs." A bill for an accounting and to permit the plaintiffs "to have access to all the books of the partnership" was sustained, but the court refused to make an order "for carrying on the partnership concerns unless with a view to dissolution." It is claimed that this case was overruled by *Knebell* v. *White* (2 Younge & C. Exch. 15), where it was held that a bill for an account of partnership transactions must pray for a dissolution or the court could not take jurisdiction.

From the fragmentary report of *Harrison* v. *Armitage* (4 Mad. 143) it appears that the defendant denied that there was any partnership and the court so held, but remarked orally that one partner might file a bill against another for an account without asking for a dissolution, although not in a case of *interim* management. The remark was obiter, and so limited as not to include the case we are considering, yet it is one of the few authorities relied upon by those who claim that courts of equity should open their doors to admit quarreling copartners.

In *Knowles* v. *Haughton* (11 Vesey, Jr., Ch. R. 168) the existence of the partnership was denied by the defendant, who claimed that the plaintiff "was merely employed as a clerk." An accounting was granted without a dissolution, the object being to establish the partnership.

In *Loscombe* v. *Russell* (4 Simons, 8) there was a partnership for seven years, "and so from seven years to seven years, till determined by notice." After the first period had expired and one year of the second, a bill was filed for an account of the profits upon the allegation that no settlement had been made for the last three years. In dismissing the bill the court said : "With respect to the law of this court upon this subject, there is no instance of an account being decreed of the profits of a partnership on a bill which does not pray a dissolution, but contemplates the subsistence of the partner-

ship. * * * With respect to occasional breaches of agreement between partners, when they are not of so grievous a nature as to make it impossible that the partnership should continue, the court stands neuter; but when it finds that the acts complained of are of such a character as to show that the partners cannot continue partners and that relief cannot be given but by a dissolution, the court will decree it, although it is not specifically asked. Here a dissolution is not prayed for and if the court were to do what is asked, it would not be final."

Under similar circumstances, Lord ELDON dismissed the bill in *Forman* v. *Homfray* (2 Ves. & B. 329), observing "that if a partner can come here merely for an account, pending the partnership, there seems nothing to prevent his coming annually."

In *Taylor* v. *Davis* (4 Law J. [N. S.] 18) an injunction was granted restraining the defendant from retaining in his sole possession and excluding the plaintiff from access to a book kept by the firm and indispensable to the business. The book had been abstracted by the defendant and he had threatened to burn it.

In *Marshall* v. *Colman* (2 Jacob & W. 266) the court declined to restrain the defendant from violating the articles of partnership in refusing to use the name of the plaintiff as a part of the firm name in the transaction of firm business. The lord chancellor said: "It would be quite a new head of equity for the court to interfere where one party violates a particular covenant and the other party does not choose to put an end to the partnership; in that way there may be a separate suit and a perpetual injunction in respect of each covenant and that is a jurisdiction that we have never decidedly entertained."

In *Knebell* v. *White* (2 Younge & C. 15) previous conflicting decisions were considered and the court said: "It may now, therefore, be considered as settled that in the case of ordinary trading partnerships, an account of partnership transactions must be consequent upon a dissolution of the partnership."

These cases illustrate, if they do not exhaust, the instances where the courts of England have interfered, or refused to interfere, when a dissolution of the firm was not asked. In this country the question does not appear to have been directly decided, at least not in this state. It was not involved in *Sanger* v. *French* (157 N. Y. 213), nor in *Traphagen* v. *Burt* (67 N. Y. 30), as will appear from an examination of the facts. The primary object of those actions was to establish a partnership with reference to a particular adventure, and they turned mainly on the existence and effect of an oral agreement between the parties. Our courts, and especially those having jurisdiction under the laws of Congress, have sometimes interfered by injunction in a flagrant case of danger and injustice, although no dissolution of the firm was contemplated. (*Marble Co.* v. *Ripley*, 10 Wall. 339; *Leavitt* v. *Windsor Land & Inv. Co.*, 54 Fed. Rep. 439.) This is quite different from an action for an accounting without a dissolution, where no especial reason is alleged or proved to show that one is necessary, or to authorize a departure from the general rule.

A court of equity will not take cognizance of an action for an accounting as a mere incident to the settlement of a solitary matter in dispute between partners, when it is not vital to either party or to the business and dissolution is not sought. Actions to establish a partnership, the existence of which was denied by the partner in control; to give a partner access to the books after persistent refusal, or to permit him to take part in the business from which he had been excluded, are founded on intentional and continuous wrongdoing which, unless arrested, might subvert the partnership. When one party seizes or absorbs the entire business, or usurps rights of his copartner which are essential to his safety or the safety of the firm, or persists in misconduct so gross as to threaten destruction to the interests of all, the court may intervene to restore the rights of the innocent party or to rescue a paying business from ruin. Extreme necessity only, however, will justify interference without a

dissolution. There was no sufficient reason for an appeal to a court of equity in the case under consideration. There was no equity in the bill as filed by the plaintiffs and none in the case made for them by the evidence. The defendant Murchison had an adequate remedy at law, and he can take nothing from his intrusion into the litigation, under the circumstances, for the questionable order admitting him as a defendant did not create a cause of action nor add to the jurisdiction of the court. All the parties should be put back where they were before the action was commenced, and, hence, it is our duty to reverse the judgments below and dismiss the complaint, with costs to the defendant Hull against the plaintiffs and the defendant Murchison.

GRAY, O'BRIEN, HAIGHT, MARTIN and CULLEN, JJ., concur; PARKER, Ch. J., absent.

Judgments reversed.