JOHN W. STERLING, as an Executor, etc., of EDWIN S. CHAPIN, Deceased, Respondent, v. ALBERT K. CHAPIN, Individually and as an Executor, etc., of EDWIN S. CHAPIN, Deceased, Appellant.

*Release — when effective to discharge an obligation for money loaned to enable the borrower to buy a stock exchange seat — the fact that the release was given pursuant to a custom of the New York Stock Exchange does not impair its efficiency — an entry in firm books, thereafter made by one partner, of his obligation for such money to his copartner is of no effect.*

In an action brought to obtain an accounting of the assets of a partnership, composed of the plaintiff's testator and the defendant, it appeared that the books of the partnership contained an item in the defendant's handwriting charging him with the cost of a seat in the New York Stock Exchange, the amount of which cost was apparently due to the plaintiff's testator from the defendant. The defendant produced an instrument executed two weeks prior to the date of the item contained in the books, by which the testator released and discharged the defendant from all demands in law and in equity which he had against the defendant, "and more particularly by reason of an advance of the sum of $29,000 made to the said Albert K. Chapin (the defendant) to enable him to purchase a membership in the New York Stock Exchange." The release was produced from the records of the New York Stock Exchange, but it did not appear whether it had been delivered there by the plaintiff's testator or the defendant. The secretary of the New York Stock Exchange testified that if the money for the purchase of a seat in the exchange had been advanced or given to the applicant the latter was required to furnish a release for the amount of money so given or advanced.

*Held*, that the release was effective to discharge the defendant from all liability to the plaintiff's testator for the amount advanced for the purchase of the seat in the stock exchange, whether such money was advanced by the testator individually or out of the partnership funds;

That the fact that, after the execution of the release, the defendant made an entry in the books of the partnership charging himself with the amount of such advance, did not create a liability on his part to the plaintiff's testator or to the partnership;

That the fact that the release was given pursuant to a custom of the stock exchange requiring it did not prevent full force and effect being given to such release.

LAUGHLIN, J., dissented.

APPEAL by the defendant, Albert K. Chapin, individually and as an executor, etc., of Edwin S. Chapin, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of Novem-

ber, 1904, upon an order bearing date the 4th day of November, 1904, entered in said clerk's office overruling the defendant's exceptions to the report of the referee theretofore appointed herein, and confirming said report, with notice of an intention to bring up for review upon such appeal an interlocutory judgment entered in said clerk's office on the 22d day of April, 1903, directing a copartnership accounting and appointing a referee.

*L. Laflin Kellogg,* for the appellant.

*John A. Garver,* for the respondent.

INGRAHAM, J. :

The complaint alleges that the plaintiff's testator and the defendant were copartners, the plaintiff's testator having contributed the entire capital of the copartnership ; that the plaintiff's testator died in September, 1901 ; that no final settlement of the accounts of the said partnership was ever made, and asks for an accounting.

The answer admits the copartnership, alleging that it was dissolved on the 1st of May, 1896, by mutual consent. The cause coming on for trial at Special Term, the plaintiff called an accountant, who testified that he had examined the books of the firm and that they had never been closed ; that from the books it appeared that the plaintiff's testator had contributed $100,000 as capital; that his individual account showed payments and losses charged to his personal account aggregating $57,470.06, and that there appeared to his credit in the capital account upwards of $43,000 ; that there was also an account in which the defendant was charged with the cost of a seat in the New York Stock Exchange amounting to $37,078.80 which appears upon the books to be due. There were further accounts of commissions and interest which showed small debit balances and an expense account which showed a small credit balance; that the last entry upon the books was upon September 23, 1896 ; the books were then introduced in evidence and the plaintiff rested. Counsel for the defendant moved to dismiss the complaint, which was denied, and the court directed an interlocutory judgment directing an accounting and appointing a referee to take and state the accounts. As this appeal brings up this interlocutory judgment for review, the first question presented is whether or not the plaintiff is entitled to judg-

ment for an accounting. It appearing that the accounts of the copartnership had never been adjusted, and the action having been brought within ten years after the dissolution of the firm, the parties were entitled upon the pleadings and proof to an interlocutory judgment, and that interlocutory judgment should, therefore, be affirmed.

Upon the accounting the referee found that at the termination of the copartnership on May 1, 1896, the assets of the firm, including the sum of $37,243.95, due from Edwin S. Chapin on his personal account for moneys withdrawn from the firm, amounted to $82,430.94, and the liabilities, including the amount due to Edwin S. Chapin for the capital contributed by him, amounted to $100,163.12, showing an excess of liabilities of $17,732.18, being losses appearing in the profit and loss account; that under the copartnership agreement these losses were chargeable to the plaintiff's testator; that on July 3, 1903, when the affairs of the firm had apparently been liquidated, the net assets of the firm consisted of a balance in the Bank of America amounting to $36.43, and the balance of the account, designated as "A. K. Chapin, Stock Exchange Seat," amounted to $37,073.80, and that the only liability of the firm was to the plaintiff's testator for the balance remaining of the capital contributed by him, leaving a net balance of capital due the plaintiff's testator of $37,115.23, which amount was due from the defendant to the plaintiff. The defendant filed exceptions to the referee's report, which, however, was confirmed, and from the final judgment entered thereon the defendant appeals.

The only question at issue before the referee was the liability of the defendant for the $37,073.80, which appeared upon the books as a charge against him for the cost of the stock exchange seat. The copartnership books were before the referee, and from these books it appeared that on November 1, 1886, the plaintiff's testator contributed the sum of $100,000 in cash as capital of the firm, and at the end of each six months there was credited to his personal account interest at six per cent on that sum which became a charge on the profits of the business; that the defendant contributed no capital to the firm, and that at the end of each year the profits and losses were distributed, seventy-five per cent to the plaintiff's testator and twenty-five per cent to the defendant; that the defendant's

account in the books showed a charge to him on January 20, 1887, for cash $30,110, a credit on May 1, 1888, of $5,423.45, leaving a balance due of $27,000, on which interest was charged each year at six per cent and which resulted in a debit balance on May 1, 1896, of $37,078.80, and it is for this sum that the defendant has been held liable to the plaintiff upon the accounting. Upon this evidence the plaintiff seems to have rested.

The defendant then produced a general release by which the plaintiff's testator released and discharged the defendant from all demands in law and equity which he had against the defendant "and more particularly by reason of an advance of the sum of twenty-nine thousand dollars ($29,000) made to the said Albert K. Chapin to enable him to purchase a membership in the New York Stock Exchange." This release was executed and acknowledged by the plaintiff's testator and was produced from the records of the New York Stock Exchange. The secretary of the New York Stock Exchange testified that it was customary to take a release where money is advanced or given for the purchase of a membership; that there was nothing upon the subject in the rules of the New York Stock Exchange; that the witness knew nothing of this paper, except that it was found among the records of the exchange; that when an applicant applies for membership upon the stock exchange he was asked whether he purchased the membership with his own means; that if any part of the money for the purchase of the seat had been given to him the applicant was called upon to procure a release for that amount of money. A brother of the plaintiff's testator testified that he had a conversation with the plaintiff's testator in October, 1898, at which the plaintiff's testator objected to the entry in the books in relation to this stock exchange seat, and said that in case of his death the seat belonged to the defendant; that that amount should be charged off. The defendant was then called and testified that the account of the stock exchange seat in the ledger was in his handwriting. All conversations between the plaintiff's testator and the witness in relation to this account or to the stock exchange seat were excluded as being incompetent under section 829 of the Code of Civil Procedure.

The one question presented is whether the defendant is indebted to the copartnership, which consisted of himself and the plaintiff's

testator, for the amount paid for this seat in the New York Stock
Exchange which was purchased by the defendant. To prove such
indebtedness there was exhibited in the books of the firm an account
in which there was charged to the defendant the amount paid for
that seat. On behalf of the defendant a general release was proved
by which the plaintiff's testator released and discharged the defend-
ant from all liability of every kind and nature existing in favor of
the plaintiff's testator against the defendant, and particularly from
all demands by reason of an advance of the sum of $29,000 made to
the defendant to enable him to purchase a membership in the New
York Stock Exchange, and it is the effect of this release which is to
determine the question as to the defendant's liability to his brother
as his copartner for the amount which was paid for that seat in the
stock exchange. This release was dated the 6th of January, 1887.
The firm at that time had been in existence from the first of the
previous May. There is no evidence to show when the money was
actually paid for the purchase of the stock exchange seat, except the
charge in the defendant's account in the books of the copartnership.
The situation at the time of the purchase of this seat was that the
plaintiff's testator had contributed to this firm all its capital, and
was entitled to all of the assets of the firm upon dissolution, except
that the defendant was entitled to twenty-five per cent of the profits
made each year. The release shows in the most formal manner that
the plaintiff's testator considered the advance of $29,000 made to
the defendant to purchase this seat in the stock exchange as an
advance made by him for the benefit of the defendant. Whether
this money was taken from his capital which plaintiff's testator had
contributed to the firm, or was furnished by him from his private
means, seems to me to be immaterial. It was in effect an advance
by the plaintiff's testator to the defendant to enable him to purchase
the seat in the stock exchange; and for the amount thus furnished,
whether it was paid by the plaintiff's testator individually, or from
his capital contributed to the copartnership, the defendant was
liable to the plaintiff's testator. This being the condition, the
plaintiff's testator formally released the defendant from all lia-
bility on account of that advance. The entry in the defendant's
account was dated the twentieth of January, fourteen days after

the date of the general release, but the release speaks of the advance as having been made when it was executed, and from an obligation to repay that advance the defendant was released and discharged. If the release had actually discharged the defendant from liability to the plaintiff's testator for the amount advanced for the purchase of the seat in the exchange, the fact that the defendant had made an entry in the books of the firm charging himself with the amount paid would not create a liability to the plaintiff's testator or to the copartnership. That entry in the books is an admission of a liability to the firm and nothing more, and when it appeared that the obligation represented by the charge was released under seal there certainly would be no foundation for holding the defendant liable for an amount from which he had been released.

The learned referee declined to give effect to this release because it was furnished to the stock exchange under a custom which required a person applying for membership either to state that the membership had been purchased with his own money or that the person who had furnished the money had released the applicant for membership from an obligation to repay the amount that had been contributed for the purchase of the seat, but I cannot see that this would at all affect the legal operation of the release in discharging a claim for the repayment of the sum advanced. The release is produced from the records of the stock exchange, but it was evidently a part of the transaction which resulted in the acquisition of a seat in the exchange and the admission of the defendant to membership, and while a delivery of the release was a necessary part of its execution when delivered to the stock exchange, it became binding upon the plaintiff's testator. There is no evidence to show that the release was not delivered to the defendant and by him delivered to the stock exchange, but it was delivered for the purpose of releasing the obligation of the defendant to repay the advance to the plaintiff's testator. The release was either operative or it was not. If it was operative at all it released the defendant from any obligation to the plaintiff's testator on account of this advance. If it was not operative the plaintiff's testator's claim against the defendant still remained in full force and effect. It was found by the learned referee that the release was intended to release the claim of the plaintiff's testator as against the other members of the stock exchange.

I do not see how the legal effect of a general release under seal can be limited by evidence that it was not intended to absolutely discharge the debtor from liability, but there is no evidence to show that such was the intention of the plaintiff's testator in executing and delivering this release. The fact that the stock exchange required such a release would be a reason why the plaintiff's testator executed it, but certainly not a reason to show that the release when executed and delivered was not to be given its full force and effect. Nor can it be successfully contended that the delivery of the release to the stock exchange did not inure to the benefit of the defendant. Even if it were shown that the plaintiff's testator executed and delivered it directly to the stock exchange it was a delivery for the benefit of the defendant who was then an applicant for membership in the exchange and to furnish legal evidence to the exchange that there was no obligation on the part of the defendant to repay to the plaintiff's testator the amount advanced for the purchase of the seat. That such a delivery was for the benefit of the person in whose favor it operated is, I think, clear, and upon the execution and delivery of that release all liability of the defendant to the plaintiff, either directly or indirectly, for the amount that had been advanced by the plaintiff's testator for the purchase of this seat in the stock exchange was released and discharged.

It is claimed by the plaintiff, however, that, as it appears that the payment was made two weeks after the date of the release, the release did not have the effect of destroying an obligation subsequently incurred, but it took effect from the time of its delivery and there was no evidence that the payment was not made until after the release was delivered. The entry in the books of copartnership charging the defendant with the amount was dated two weeks after the date of the release, but this would be entirely immaterial, as it was an obligation to repay money advanced for the purchase of the seat in the exchange which was released. What the plaintiff's testator intended to do, and what he did, was to discharge the defendant from any obligation to repay the amount which was advanced for the purchase of this seat, and this advance is the only foundation for the charge in the books of the copartnership and for which the defendant has been held liable.

I think, therefore, that upon the undisputed evidence there was

no existing obligation in favor of the plaintiff's testator, either as copartner or individually, for the repayment of the sum advanced by him for the purchase of this seat in the exchange and that the. judgment should, therefore, be reversed and the accounting under the interlocutory judgment taken before another referee, with costs to the appellant to abide the event.

Van Brunt, P. J., O'Brien and Hatch, JJ., concurred; Laughlin, J., dissented.

Laughlin, J. (dissenting):

The plaintiff's testator, Edwin S. Chapin, and the defendant Albert K. Chapin were brothers and copartners in business as stockbrokers from the year 1886 until the 1st day of May, 1896, when the firm was dissolved by mutual consent. Edwin S. Chapin died on the 3d day of September, 1901, and this action is brought by one of his executors against the surviving partner, who is also an executor, both individually and as executor, for a copartnership accounting. The only material allegation of the complaint put in issue by the answer was an allegation that the copartnership affairs had not been settled. The defendant alleged that they had been mutually adjusted. The issues were brought to trial before the court, and, it appearing that there had been no settlement between the partners, the court made a decision directing the entry of an interlocutory judgment for an accounting. The decision in this respect was proper. It was neither necessary nor proper for the court in the decision or interlocutory decree to determine specifically the items concerning which the accounting should be had.

. The defendant pleaded the six and ten years' Statute of Limitations as a bar to the action. It being a suit in equity it is manifest that the six years' Statute of Limitations has no application. The statute applicable is the ten years' Statute of Limitations and it did not begin to run until after the dissolution of the firm, for no action for the accounting would lie until then, or a reasonable time thereafter, for the liquidation of the business. (*Gray* v. *Green*, 142 N. Y. 316; *Lord* v. *Hull*, 178 id. 9.) This action was commenced on the 16th day of October, 1902, within ten years of the dissolution of the firm, and it was, therefore, timely brought.

The referee allowed a charge on the firm books against the

defendant for moneys loaned to him by the firm on the 20th day of January, 1887, to enable him to purchase a seat in the New York Stock Exchange. The balance owing on that item at the time the referee made his report aggregated $37,078.80. The remaining question presented by the appeal is the correctness of this allowance. On this point the appellant urged two grounds for reversal : (1) That the funds with which the seat was purchased were not copartnership funds but constituted an individual loan by the decedent to him, and

(2) that the defendant's liability therefor was canceled by a general release under seal executed on the 6th day of January, 1887, two weeks prior to the loan. These are sound legal propositions and either, if established by the evidence, would be fatal to the charge made against the defendant. If it was not a copartnership loan the defendant cannot be compelled to account to the firm therefor and his liability could have been enforced at law. The six years' Statute of Limitations would bar a recovery on that theory. On the other hand, if the liability of the defendant has been absolutely released by formal release under seal he can neither be compelled to account to the firm nor would he be liable in an action at law. It is immaterial whether the release in form released the firm. It does not appear that there are firm creditors necessitating the enforcement of the liability for their benefit. The decedent contributed and owned the entire capital consisting of $100,000 and the profits were to be divided, seventy-five per cent to the decedent and twenty-five per cent to the appellant. If the loan was made from the *capital* of the firm, in which the decedent alone is entitled to share, it is evident that if he released the appellant individually the latter cannot be compelled to reimburse the firm for the benefit of the decedent even though the loan was made by the firm.

The release is an ordinary general release of the defendant by the decedent with a specification " and more particularly by reason of an advance of the sum of twenty-nine thousand dollars ($29,000) made to the said Albert K. Chapin to enable him to purchase a membership in the New York Stock Exchange," and it contains no reference to the partnership. It was signed and sealed in the presence of a witness and duly acknowledged on the same day. It does

not appear that it was ever delivered to the appellant. It was found on the files of the New York Stock Exchange and produced by the secretary thereof who testified in substance, under the objection and exception of the appellant, that the terms of the written instrument could not be contradicted by parol, that it was the usage and custom of the exchange to inquire of an applicant for membership whether any part of the money with which his seat was purchased had been loaned to him, and, if so, to require, with a view to protecting the members of the exchange dealing with the new member, a release from the person from whom he obtained the loan as a condition of admitting him to membership. I am of opinion that this evidence was competent. It tended to show and, taken with the other evidence, I think, satisfactorily shows that the release was executed, not for the purpose of discharging the indebtedness as between the parties, but for the purpose of complying with a requirement of the New York Stock Exchange so as to enable the defendant to obtain a seat therein for the use and benefit of the firm. The other evidence indicates quite clearly that while the seat was owned by the appellant it was to be used during the continuance of the copartnership for the benefit of the firm. Undoubtedly as against the New York Stock Exchange or its members the decedent would be estopped by the release from enforcing the indebtedness; but that was the extent to which the release was intended by the parties to operate. It is to be borne in mind that this is a suit in equity. There is no evidence indicating, and it is not pretended, that this indebtedness was ever paid, nor is there any evidence other than the release of its cancellation. If the parties intended that the release should operate for this special purpose, manifestly it would be a fraud upon the decedent's estate to permit it to be used to shield the appellant from paying his just indebtedness; and in such case, as I read the authorities, the rule that a written instrument cannot be limited by parol is not applied. (*Grierson* v. *Mason*, 60 N. Y. 394; *Blewitt* v. *Boorum*, 142 id. 357; *Baird* v. *Baird*, 145 id. 659; *Higgins* v. *Ridgway*, 153 id. 130; *Medical College Laboratory* v. *N. Y. University*, 76 App. Div. 48, 59, 60, and cases cited; S. C., 178 N. Y. 153.)

On the question as to whether the loan was by the decedent individually or by the firm the evidence is conflicting; but I am of the

opinion that it preponderates in favor of the conclusion, reached by the learned referee and at Special Term, that it was a firm transaction. As has been seen, the money was advanced two weeks after the execution of the release. The decedent had contributed $100,000, as the capital of the firm and the firm books show that the money advanced to the appellant came from the firm, for it is charged to him upon the firm books on the same day. He is likewise charged upon the firm books with interest on this account, and it appears that he made payments from time to time thereon. It further appears that on the 5th day of August, 1889, he wrote a letter to the decedent stating that he understood that the latter was contemplating making him one of his executors and reciting that he was then indebted to his brother on account of the purchase money of this seat in the stock exchange, and that for that reason he would cheerfully act as executor without commission or other compensation than a release under the will "from so much of my said indebtedness as would equal the commission or compensation to which I should otherwise be entitled." It also appears that the appellant after the death of his brother admitted to three witnesses in substance that he owed his brother for this seat in the stock exchange, and while he denies the interviews in a general way, he does not specifically deny the admissions. The only substantial evidence, therefore, tending to show that it was an individual loan is the recital in the release; but this, I think, is consistent with the money having been advanced by the firm. Since it was advanced from the capital of the firm, in which the appellant was not entitled to share, it necessarily consisted of moneys belonging to the decedent, although they were moneys which it was his duty to leave in the firm until its dissolution. As between the parties it would not be unnatural to refer to these moneys as belonging to the decedent and as a loan by him. Another brother of the appellant was called as a witness for the purpose of showing a conversation with the decedent on or about the 1st of October, 1898. The witness shortly after the interview had related it to the appellant, who reduced it to writing, and it was then read over and signed by the witness. The witness was sixty years of age and apparently feeble mentally and physically at the time of the hearing before the referee. He was unable to remember the conversation without refreshing his recollection by the writing. He

was permitted to look at the writing at the time he was questioned concerning the interview, and in this manner his recollection was sufficiently refreshed so that he testified, I think, to all the material parts of the interview as reduced to writing. Counsel for the appellant then offered the writing in evidence. This was objected to and excluded. The witness having given the substance of the interview as recorded in the writing, I think there was no error in excluding it; but if it should have been received, its exclusion was not prejudicial error. It had no material bearing upon either of the issues as to whether the release was intended to have full effect or whether the loan was by the decedent individually or by the firm. According to the writing which was excluded, the decedent stated in the presence of the witness, after referring to this stock exchange account and to other accounts on the firm books, that "This is not right, this stands against Al in case of my death, but in case of my death the seat is his; said this has been worrying me and should be charged off, of course if I live Al is morally bound to pay me. We will have to bring the ledger up to the office and fix the matter up." · It will be seen that there is no reference to the release. There is no declaration that the indebtedness was paid. On the contrary, it indicates that the decedent thought that the entry upon the books showed that the seat belonged to the firm — a view not wholly groundless — and also, perhaps, that he contemplated canceling the indebtedness against his brother. That, however, was not done; and this, manifestly, was insufficient to constitute a gift *causa mortis* or a release of the indebtedness. (*Bray* v. *O'Rourke*, 89 App. Div. 400; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Doty* v. *Wilson*, 5 Lans. 7.) ′

It follows, therefore, that the judgment and order should be affirmed, with costs.

Judgment reversed and accounting under interlocutory judgment ordered before another referee, with costs to appellant to abide event.