(89 App. Div. 400.)

## BRAY v. O'ROURKE.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. EVIDENCE OF GIFT—SUFFICIENCY.
   A gift must be established by satisfactory proof, and where the matter is left in doubt on the whole case the gift must fail.

2. SAME—GIFT INTER VIVOS.
   Evidence of a gift inter vivos, not asserted until after the death of the alleged donor, must be as clear as that required to sustain a gift causa mortis.

3. SAME.
   A gift cannot be sustained by evidence pointing to the creation of a trust.

4. ACTION FOR CONVERSION—JUDGMENT ON APPEAL.
   Evidence examined, and *held* insufficient to establish a gift inter vivos.

5. ACTION FOR CONVERSION—JUDGMENT ON APPEAL.
   Where, on appeal in an action for conversion, a judgment in favor of defendant is reversed on the ground that the evidence is insufficient to establish a gift by which he claimed the right of possession to the property which he received from plaintiff's intestate, but tends to show his right thereto as a trustee, a new trial should be awarded, where it is not clear that plaintiff could not possibly recover.

Appeal from Trial Term, Kings County.

Ellen M. Bray, administratrix of John Bray, deceased, against John H. O'Rourke. From a judgment entered on a decision of the court in favor of defendant, plaintiff appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Ambrose G. Todd, for appellant.
George V. Brower, for respondent.

JENKS, J. The action is for a conversion of bonds. The defendant makes general denial, and further pleads that John Bray, the

¶ 1. See Gifts, vol. 24, Cent. Dig. § 95.

intestate of plaintiff, left the bonds with him for the support of his mother, Margaret Bray, with directions to deliver them to her upon the death of John Bray. During the trial the parties waived the jury, and submitted to the court. The court dismissed the complaint, and adjudged that the bonds must be delivered to the administrator of Margaret Bray on the ground that John Bray had made a gift of them, inter vivos, to Margaret Bray. Margaret Bray died after her son, but before the trial.

I think that the evidence does not warrant a finding of a gift inter vivos. The gift must be established by satisfactory proof, and where the matter is left in doubt upon the whole case the gift must fail. Matter of Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133. In Matter of Manhardt, 17 App. Div. 1, 44 N. Y. Supp. 836, it is held that, where a gift inter vivos is not asserted until after the death of the alleged donor, the evidence must be as clear, strong, and convincing as that required to sustain a gift causa mortis. While the presumption is not against the donee, it is held in Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141, that proof of a gift causa mortis must be clear, convincing, strong, and satisfactory. A delivery to Margaret must be based upon a delivery to the defendant, for it is beyond dispute that the bonds have always been in his possession. Thornton on Gifts lays down the rule: "But a delivery need not be made to the donee in person; it may be made to a third person for him, even without the knowledge of the latter. The delivery must be made to such third person for the use of the donee, and if it is 'made under such circumstances as indicate that the donee [sic] relinquishes all right to the possession or control of the thing given, and intends to vest a present title in the donee, the gift will be sustained.'" The rule is well expressed in Hunter v. Hunter, 19 Barb. 631: "The thing given must be put into the hands of the donee, or placed within his power by delivery of the means of obtaining it." Harris v. Clark, 3 N. Y. 100, 51 Am. Dec. 352. Harris v. Clark, supra, was on this point approved in Williams v. Guile, 117 N. Y. 343, 347, 22 N. E. 1071, 6 L. R. A. 366, and in Curry v. Powers, 70 N. Y. 212, 215, 26 Am. Rep. 577.

The plaintiff rested upon formal proof. Only two of the several witnesses called by the defendant testify directly to the issue. The first is a life insurance agent, who asked Mr. Bray to insure his life. Mr. Bray answered: "I don't want to. There is only one person that I have got any regard for, that I feel in duty bound to protect, and I think I have done it." Bray then said that the person was his mother, and added, "I have already taken care of her." He said he had given Mr. O'Rourke $20,000 to invest for her. He further said: "'I don't propose to leave my mother a beggar.' Q. Did he say how that was invested? A. No; in the ice business." The second witness was the vice president of the Hygenic Ice Company. He testifies that Mr. Bray asked him as to the safety of an investment in that company:

"All he said to me was that he proposed to invest a certain amount of money for the support of his mother. Mr. Bray's health was not at all good, and he sometimes felt that he might drop off suddenly, and he said that he was likely to do so at any time, and therefore he wanted to make provision for the support of his mother, and we talked it over some little time then. Then shortly afterwards he told me that he had given to Mr. O'Rourke—he

called him the boss. He said: 'I have given the boss $20,000 to put in the ice company's bonds. * * * The boss guaranties the payment of the interest and the principal, so that it is all right anyway;' and he said: 'I am going to leave the bonds with him, so that, if anything happens to me, my mother will be taken care of.' * * * He told me that he had given Mr. O'Rourke $20,000 to buy these bonds, and that Mr. O'Rourke had bought the bonds, had guarantied the payment of the principal and interest, and he had turned the bonds over to Mr. O'Rourke for the future support of his mother. Q. For the support of his mother? A. Or, rather— Well, he didn't put it in those words. What he said was, 'Take care of my mother.' "

The bonds were for $1,000 each, and stated an indebtedness to the Long Island Loan & Trust Company or bearer, which indebtedness it promised to pay to bearer, or, in case the bonds were registered, to the registered owner thereof. The bonds were to pass by delivery, or the principal might be registered by its owner. They bore interest at 6 per cent., payable semiannually, were dated 1893, and originally 60 coupons, payable to bearer, were annexed to each bond. Mr. Bray was of mature years, and for a time had been in business as a contractor with the defendant. He married the plaintiff 29 years before his death. They had two children born dead. They became estranged, for 25 years lived apart, and were never reunited. He did not make any provision for her support. Mr. Bray lived with his mother and married sister during these 25 years. He was the sole support of his mother. The bonds constituted his estate.

The defendant was called to the stand, but the record does not show that he was asked touching the transaction between him and John Bray. Neither party, then, has the benefit or the bar, respectively, of the evidence of that witness, who, presumably, above all others, can throw light upon this case.

The evidence tends to establish that Mr. Bray did not hand these bonds to the defendant as for a delivery to Margaret Bray, thereby completing a gift to her through the defendant, but that he gave $20,000 to the defendant to invest in the bonds and to hold them for the support of Margaret Bray. Mr. Bray said that the defendant guarantied the payment of the interest thereon and of the principal thereof. He spoke of the transaction as an investment, and said that he had turned over the bonds to the defendant for the support or care of Margaret Bray. This rather indicates a scheme that the defendant should keep the bonds as an investment, and apply the income thereof for the maintenance of the mother of Mr. Bray. All this makes for the creation of a trust in the defendant, whereof Margaret Bray is the cestui que trust. Such a trust could be made by parol, without set and formal phrase (Hirsh v. Auer, 146 N. Y. 12, 40 N. E. 397; Matter of Carpenter, 131 N. Y. 86, 29 N. E. 1005); and the delivery of the bonds was sufficient to pass the title (Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41). In Gilman v. McArdle, supra, the court, per Rapallo, J., say:

"The learned judge who rendered the judgment in the present case expressed the opinion that the disposition in question would have created a valid trust if contained in a will, though not valid under the circumstances of this case as a disposition inter vivos; but it seems to us that any trust of property which would be valid if created by will can be created by the owner of property in his lifetime, provided it is then to go into operation,

although it is to be executed after his death, and that in the case of money or personal property it may be created by oral agreement accompanied by a transfer or delivery of the property, and that such delivery will pass the title to the property, and that as a trust its validity is to be tested by the same rules whether it be created by will or by contract inter vivos."

Such a trust would not be passive, but necessarily would give the legal property in the bonds and the possession thereof to the trustee. Knox v. Jones, 47 N. Y. 389, 396.

In Maitland v. Baldwin, 70 Hun, 267, 24 N. Y. Supp. 29, it was held that a devise of $50,000 to the executors, to invest the same and to pay over the income, created an express trust, and that the trustee was clothed with the legal title. The law then existing is found in Personal Property Law (section 2, art. 1, c. 417, p. 507, Laws 1897) and Real Property Law (section 76, art. 3, c. 547, p. 571, Laws 1896).

Now, evidence which points to the creation of a trust is antagonistic to the theory of a gift, and therefore we cannot sustain a gift by it. This is clearly shown by Rapallo, J., in Young v. Young, 80 N. Y. 422, 430, 36 Am. Rep. 634. Even if we should conclude that the evidence sufficiently established a trust in the defendant for the benefit of Margaret Bray during her life, that would not support the judgment, for the reason that, as Margaret Bray is dead, the vital question is whether her administrator is entitled to the corpus exclusive of the administrator of John Bray. I am not unmindful of a rule that a general gift of the income arising from personal property, making no mention of the principal, is equivalent to a general gift of the property (Hatch v. Bassett, 52 N. Y. 359, 362), and that the question is thoroughly discussed in the light of a trust in Locke v. F. L. & T. Co., 140 N. Y. 135, 35 N. E. 578. If the sole question on this appeal were the dismissal of the complaint for conversion, there might well be an affirmance of the judgment. For the evidence indicates that the defendant came into possession of the bonds at the instance of the purchaser and in fulfillment of his purpose. He pleads that the bonds were delivered to him by the purchaser to hold for another, with directions to transfer them to that person upon the death of the purchaser. He makes no personal claim to the bonds, and asserts no personal lien upon them. He avers that there are two conflicting claimants, of whom both have made a demand upon him, and states that, while he is advised to deliver to neither, he stands ready to deliver the bonds into the custody of the court, and to abide its determination of these conflicting claims. It does not appear but that this action followed so quickly upon the demand of the plaintiff and the refusal thereof that the defendant did all required of him when he answered in the spirit of an interpleader. See Schermerhorn v. Van Volkenburgh, 11 Johns. 528; Rotan v. Fletcher, 15 Johns. 207; Duncan v. Spear, 11 Wend. 54; McEntee v. The New Jersey Steamboat Co., 45 N. Y. 34, 6 Am. Rep. 28; Ball v. Liney, 48 N. Y. 6, 8 Am. Rep. 511. I shall not now attempt to pass upon the sufficiency of the testimony to establish a trust in any way to preclude the trial court or this court upon that question. I think that we should hold that the judgment should be reversed because not supported by evidence of a gift inter vivos. Benedict v. Arnoux, 154

N. Y. 715, 49 N. E. 326; New v. Village of New Rochelle, 158 N. Y. 41, 52 N. E. 647. I think, too, that the entire judgment should be reversed, as it is not clear that the plaintiff could not possibly recover. Iselin v. Starin, 144 N. Y. 453, 460, 39 N. E. 488. Even an improbability of recovery is not sufficient. Heller v. Cohen, 154 N. Y. 299, 305, 48 N. E. 527.

The judgment should be reversed, and a new trial be granted, costs to abide the event. All concur.