Laughlin, J. (dissenting):
The plaintiff’s testator, Edwin S. Chapin, and the defendant Albert K. Chapin were brothers and copartners in business as stockbrokers from the year 1886 until the 1st day of May, 1896, when the firm was dissolved by mutual consent. Edwin S. Chapin died on the 3d day of September, 1901, and this action is brought by one of his executors against the surviving partner, who is also an executor, both individually and as executor, for a copartnership accounting. The only material allegation of the complaint put in issue by the answer was an allegation that the copartnership affairs had not been settled. The defendant alleged that they had been mutually adjusted. The issues were brought to trial before the court, and, it appearing that there had been no settlement between the partners, the court made a decision directing the entry of an interlocutory judgment for an accounting. The decision in this respect was proper. It was neither necessary nor proper for the court in the decision or interlocutory decree to determine specifically the items concerning which the accounting should be had.
The defendant pleaded the six and ten years’ Statute of Limitations as a bar to the action. It being a suit in equity it is manifest that the six years’ Statute °of Limitations has no application. The statute applicable is the ten years’ Statute of Limitations and it did not begin to run until after the dissolution of the firm, for no action for the accounting would lie until then, or a reasonable time thereafter, for the liquidation of the business. (Gray v. Green, 142 N. Y. 316; Lord, v. Hull, 178 id. 9.) This action was commenced on the 16th day of October, 1902, within ten years of the dissolution of the firm, and it was, therefore, timely brought.
The referee allowed a charge on the firm books against the *597 defendant for moneys loaned to him by the firm on the 20tli day of January, 1887, to enable him .to purchase a seat in the New York Stock Exchange. The balance owing on that item at the time the referee made his report aggregated $37,078.80. The remaining question presented by the appeal is the correctness of this allowance. On this point the appellant urged two grounds for reversal: (1) That the funds with which the seat was purchased were not copartnership funds but constituted an individual loan by the decedent to him, and
(2) that the defendant’s liability therefor was canceled by a general release under seal executed on the 6th day of January, 1887, two weeks prior to the loan. These are sound legal propositions and either, if established by the evidence, would be fatal to the charge-made against the defendant. If it was not a copartnership loan the defendant cannot be compelled to account to the firm therefor and his liability could have been enforced at law. The six years’ Statute of Limitations would bar a recovery on that theory. On the other hand, if the liability of the defendant has been absolutely released by formal release under seal he can neither be compelled to account to the firm nor would lie be liable in an action at law. It is immaterial whether the release in form released the firm. It does not appear that there are firm creditors necessitating the enforcement of the liability for their benefit. The'decedent contributed and owned the entire capital consisting of $100,000 and the profits were to be divided, seventy-five per cent to the decedent and twenty-five per cent to the appellant. If the loan was made from the capital of the firm, in which the decedent alone is entitled to share, it is evident that if he released the appellant individually the latter cannot be compelled to reimburse the firm for the benefit of the decedent even though the loan was made by the firm.
The release is an ordinary general release of the defendant by the decedent with a specification “ and more particularly by reason of an advance of the sum of twenty-nine thousand dollars ($29,000) ■ made to the said Albert IL Chapin to enable him to purchase a membership in the New York Stock Exchange,” and it contains no reference to the partnership. It was signed and sealed in the presence of a witness and duly acknowledged on the same day. It does *598 mot appear that it was ever delivered to the appellant. It was found <on the files of the New York Stock Exchange and produced by the ■secretary thereof who testified in substance, under the objection and exception of the appellant, that the terms of the written instrument could not be contradicted by parol, that it was the usage and custom of the exchange to inquire of an applicant for membership whether any part of the money with which his seat was purchased had been loaned to him, and, if so, to require, with a view to protecting fhe members of the exchange dealing with the new member, a release from the person from whom he obtained the loan as a condition of ^admitting him to membership. I am of opinion that this evidence was competent. It tended to show and, taken with the other evidence, I think, satisfactorily shows that the release was executed, not for the purpose of discharging the indebtedness as between the parties, but for the purpose of complying with a requirement of the New York Stock Exchange so as to enable the defendant to obtain a seat therein for the use and benefit of the firm. The other evidence indicates quite clearly that while the seat was owned by the appellant it was to be used during the continuance of the copartnership for the benefit of the firm. Undoubtedly as against the New York Stock Exchange or its members the decedent would be estopped by the release from enforcing the indebtedness; but that was the extent to which the release was intended by the parties to operate. It is to be borne in mind that this is a suit in equity. There is no evidence indicating, and it is not pretended, that this indebtedness was ever paid, nor is there any evidence other than the release of its cancellation. If the parties intended that the release should operate for this special purpose, manifestly it would be a fraud upon the decedent’s estate" to permit it to be used to shield the appellant from paying his just indebtedness; and in such case, as I read the authorities, the rule that a written instrument cannot be limited by parol is not applied. (Grierson v. Mason, 60 N. Y. 394; Blewitt v. Boorum, 142 id. 357; Baird v. Baird, 145 id. 669; Higgins v. Ridgway, 153 id. 130; Medical College Laboratory v. N. Y. University, 76 App. Div. 48, 59, 60, and cases cited; S. C., 178 N. Y. 153.)
On the question as to whether the loan was by the decedent individually or by the firm the evidence is conflicting; but I am of the *599 opinion that it preponderates in favor of the conclusion, reached by the learned referee and at Special Term, that it was a firm transaction. As has been seen, the money was advanced two weeks after the execution of the release. The decedent had contributed $100,000, •as the capital of the firm and the firm books show that the money advanced to the appellant came from the firm, for it is charged to him upon the firm books on the same day. He is likewise charged upon the firm books with interest on this account, and it appears that he ■ made payments from time to time thereon. It further appears that on the 5th day of August, 1889, he wrote a letter to the ■decedent stating that he understood that the latter was contemplating making him one of his executors and reciting that he was then indebted to his brother on account of the purchase money of this .seat in the stock exchange, and that for that reason he would cheerfully act as executor without commission or other compensation than •a release under the will “ from so much of my said indebtedness as would equal the commission or compensation to which I should otherwise be entitled.” It also appears that the appellant after the death -of his brother admitted to three witnesses in substance that he owed his brother for this seat in the stock exchange, and while he denies the interviews in a general way, he does not specifically deny the admissions. The only substantial evidence, therefore, tending to show that it was an individual loan is the recital in the release; but this, I think, is consistent with the money having been advanced by •the firm. Since it was advanced from the capital of the firm, in which the appellant was not entitled to share, it necessarily consisted of moneys belonging to the decedent, although they were moneys which it was his duty to leave in the firm until its dissolution. As between the parties it would not be unnatural to refer to these moneys as belonging to the decedent and as a loan by him. Another brother of the appellant was called as a witness for the purpose of showing a conversation with the decedent on or about the 1st of October, 1898. The witness shortly after the interview had related it to the appellant, who reduced it to writing, and it was then read over and signed by the witness. The witness was sixty years of age and apparently feeble mentally and physically at the time of the hearing before the referee. He was unable to remember the conversation without refreshing his recollection by the writing. He *600 was permitted to look at the writing at the time he was questioned concerning the interview, and in this manner his recollection was sufficiently refreshed so that he testified, I think, to all the material parts of the interview as reduced to writing. Counsel for the appellant then offered the writing in evidence. This was objected to and excluded. The witness having given the substance of the interview as recorded in the writing, I think there was no error in excluding it; but if it should have been received, its exclusion was not prejudicial error. It had no material bearing upon either of the issues as to whether the release was intended to have full effect or whether the loan was by the decedent individually or by the firm. According to the writing which was excluded, the decedent stated in the presence of the witness, after referring to this stock exchange account and to other accounts on the firm books, that “This is not right, this stands against A1 in case of my death, but in case of my death the seat is his; said this has been worrying me and should be charged off, of course if I live A1 is morally bound to pay me. We will have to bring the ledger up to the office and fix the matter up.” • It will be seen that there is no. reference to the release. There is no declaration that the indebtedness was paid. On the contrary, it indicates that the decedent thought that the entry upon the books showed that the seat belonged to the firm—a view not* wholly groundless — and also, perhaps, that he contemplated canceling the indebtedness against his brother. That, however, was not done; and this, manifestly, was insufficient to constitute a gift causa mortis or a release of the indebtedness. (Bray v. O'Rourke, 89 App. Div. 400; Rosseau v. Rouss, 180 N. Y. 116; Doty v. Wilson, 5 Lans. 7.)
It follows, therefore, that the judgment and order should be affirmed, with costs.
Judgment reversed and accounting under interlocutory judgment 'ordered before another referee,, with costs to appellant to abide event.