(73 Misc. Rep. 594.)

### CARLON v. RYAN et al.

(City Court of New York, Trial Term. October, 1911.)

1. GIFTS (§ 31*)—DELIVERY AND ACCEPTANCE—GIFTS INTER VIVOS.

Where the holder of two notes indorses and delivers them to another with written instructions to deliver them on her death to her physician, stating that she gives the notes to him and on her death they are delivered, the transaction constitutes a gift inter vivos, though thereafter interest was paid thereon to the holder of the notes during her lifetime.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 58–62; Dec. Dig. § 31.*]

2. PARTNERSHIP (§ 146*)—PROMISSORY NOTES—INDIVIDUAL·OBLIGATION.

Where a note is made by three of five members of a firm to one of them for money advanced to pay firm debts, the obligation is the individual obligation of the makers, and one receiving the note as a gift from the payee may maintain an action thereon against the maker, and is not limited to an action against the firm for an accounting.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 146.*]

Action by Philip P. Carlon against Francis J. Ryan and James T. P. Ryan. Verdict for plaintiff, and defendants move for a new trial. Denied.

William V. Zipser, for plaintiff.
Bernard J. Isecke, for defendants.

FINELITE, J. This action came on for trial before the court and a jury, and resulted in a verdict for the plaintiff, by direction of the court. The court thereupon entertained a motion for a new trial upon all the exceptions taken at the trial, and on all the grounds enumerated in section 999 of the Code of Civil Procedure.

The facts of the case are, in substance, as follows: The action is brought by the plaintiff upon two promissory notes, one for the sum of $742.49, the other for the sum of $519.74. These notes are, respectively, dated October 7, 1907, and are made by Francis J. Ryan, James T. P. Ryan and Minnie A. O'Shea, to the order of Minnie A. O'Shea. In paragraph 2 of the first cause of action, and in paragraph 2 of the second cause of action, the plaintiff alleges "that the said Minnie A. O'Shea thereafter indorsed and delivered said note to the plaintiff for value." The complaint further alleges that Minnie A. O'Shea died on or about the 8th day of January, 1911, and that payment has been demanded.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendants, by their answer, admit making the notes in question, and that Minnie A. O'Shea died, as alleged in the complaint, but deny the allegations contained in paragraph 2 of the first and second causes of action, "that the said Minnie A. O'Shea thereafter indorsed and delivered said note to the plaintiff for value." The answer further alleges payment of the notes; that the court has no jurisdiction of the causes of action; that the makers of the notes were copartners in business under the firm name and style of P. Ryan; that the notes were made by the three partners to the order of Minnie A. O'Shea, one of the partners, in discharge of a copartnership obligation, to be adjudged by an accounting between the partners; and that no accounting has been had. The defendants further allege that the plaintiff has given no value or consideration for these notes and has obtained possession of the same wrongfully and unlawfully after maturity thereof and subsequently to the death of Minnie A. O'Shea, and that the plaintiff is not the real party in interest nor the lawful owner of the notes.

Upon the trial there appeared to be no conflict of evidence. The plaintiff testified that the notes were in his possession at the present time. He recognized the indorsement of the decedent, and stated that no part of the notes or the interest thereon had been paid to him. On cross-examination plaintiff testified that he obtained actual possession of these notes around the 15th or 20th day of April, 1911. He further testified that he was in possession of knowledge to the effect that the decedent and the defendants were brothers and sister; that they were partners in the packing box business at No. 109 Reade street, in the city of New York; that said notes were delivered to him by John J. Hynes, an attorney and counselor at law of this city, and that this action was begun within a short time after he obtained possession of the notes; that he paid no consideration to said attorney for said notes; that a demand for payment had been duly made.

Plaintiff offered quite a number of papers in evidence, which were marked as exhibits, and to which the court now refers. Plaintiff's Exhibit C consists of the last will and testament of Mrs. O'Shea and the codicil annexed thereto, which were, respectively, executed on August 7, 1909, and were duly admitted to probate in the office of the surrogate of the county of New York on May 8, 1911. The fifth clause of said exhibit reads as follows:

"I give and bequeath to my brothers, Francis J. Ryan and James T. P. Ryan, all my undivided one-third share and interest in the packing box business, the firm of which is doing business under the name of 'P. Ryan,' the same to be divided between them in equal shares, but upon the express condition that they assume and pay all the debts and obligations of said firm incurred and outstanding at the time of my death, and that my estate shall be wholly released and discharged therefrom."

The eighth and ninth clauses read as follows:

"Eighth. I hereby release and discharge my said brother, Francis J. Ryan, from the payment of the sum of one thousand ($1,000) dollars which he has heretofore borrowed from me.

"Ninth. In view of the cruel and inhuman treatment of me by my husband, Martin J. O'Shea, and his utter neglect of me for many years past, I make no provision whatsoever for him in this my will."

The defendants offered in evidence four exhibits, the first of which was dated the 19th day of July, 1906, wherein the said Minnie A. O'Shea assigned all her interest in the packing box business, which she held in trust, to Minnie A. O'Shea, Anna Reilly, Grace M. Ryan, and the defendants herein, to have and to hold the same equally, share and share alike, together with all the income and profits arising from said business. The eighth clause of said exhibit reads as follows:

"Eighth. It is understood and agreed that the necessary funds to meet and pay all taxes, assessments, water rates or charges, interest on mortgages, fire insurance and all other charges of every name, nature and description affecting the real estate recently belonging to the said Mary E. Ryan, our mother, now deceased, but now owned equally by the parties hereto, shall be advanced and paid by the parties hereto *out of the income or proceeds from the said packing box business.*"

On the 23d day of November, 1907, this exhibit was canceled by a stipulation signed by Minnie A. O'Shea, Anna Reilly, Grace M. Ryan, and the defendants, and on said day a new agreement was entered into, the second clause of which recites that the agreement of July 19, 1906, was duly canceled and surrendered and declared to be null and void and of no further force or effect. The third clause of the said agreement of November 23, 1907, reads as follows:

"Third. That the said James T. P. Ryan, Minnie A. O'Shea, and Francis J. Ryan, three of the parties hereto, hereby jointly and severally agree to assume all debts and liabilities outstanding against the said copartnership firm of P. Ryan."

The fourth clause reads as follows:

"Fourth. That the said James T. P. Ryan, Minnie A. O'Shea and Francis J. Ryan hereby jointly and severally agree to indemnify and save harmless the said Anna Reilly and Grace M. Ryan from any and all liability for or on account of the provisions and covenants contained in the leases of the premises known as No. 109 Reade street, No. 54 Crosby street, and the premises situated on Morton and Washington streets, all in the borough of Manhattan, city of New York."

At the time of the agreement defendants' Exhibit 1 was in force, and on or about the 7th day of October, 1907, the said copartnership was indebted for taxes upon the premises No. 614 Washington street, New York City, in the sum of $742.49, and for taxes upon the premises No. 109 Reade street in the sum of $519.34, which respective amounts were advanced by the said Minnie A. O'Shea, and the notes in question were given to her as security for the payment of the amounts so advanced.

The defendants contend that as the said Minnie A. O'Shea was still a partner in said firm at the time she advanced the respective amounts for the payment of the taxes upon the premises aforesaid, and at the time when the notes were given to her to secure her for such advances, she was liable for her pro rata share of the indebtedness of said firm.

There is evidence to the effect that the firm of P. Ryan did pay to Minnie A. O'Shea during her lifetime the annual interest due on said notes up to and including October 6, 1910. The defendants further

contend that they advanced to the decedent during her lifetime out of said business the sum of $25 per week in excess of her weekly drawing account for a period of 2 years and 23 weeks, to wit, from the 1st day of August, 1908, to the 8th day of January, 1911, making a total of $3,175. This advancement so made to her was in and pursuant to the agreements made and entered into between the parties hereto.

It further appears from the evidence herein that the plaintiff received said notes from the said attorney, Hynes, between the 15th and 20th days of April, 1911, in pursuance of a letter signed by Minnie A. O'Shea, which reads as follows: ·

"JOHN J. HYNES,
"Attorney and Counsellor at Law,
  "42 Broadway.
  "Tel. 4564–4565 Broad.

"New York, August 7, 1909.

"Mr. JOHN J. HYNES:

"DEAR MR. HYNES—In the event of my death I hereby direct you to turn over to my doctor, Dr. Philip P. Carlon, the inclosed notes for $742.49 and $519.74, respectively, payable to my order, and which I have indorsed over to Dr. Carlon, which notes I make a gift of to Dr. Carlon.

"Very truly yours,                                   MINNIE A. O'SHEA."

The said John J. Hynes admitted that the above letter was written by him, and that Mrs. O'Shea signed it right after she had executed her will, and that he was instructed by her to place the said notes in an envelope, seal it, and keep them until her death, according to instructions, and deliver them after her death.

It further appears that after this alleged delivery Mrs. O'Shea went to the Women's Hospital to have an operation performed, as he understood; that she did not die under that operation, but recovered, and the said Hynes saw her subsequently thereto; that the letter and its contents remained in the possession of said Hynes from August 7, 1909,· until the day when he delivered the notes to the plaintiff herein; and that he was instructed in the event of her death to turn the notes over to the plaintiff, which he did after the death of Mrs. O'Shea.

The question of law that arises in this case is whether the notes, being left with the attorney for Minnie A. O'Shea to be delivered to the plaintiff upon her death, can be considered as a gift inter vivos or a gift causa mortis. If the delivery of the notes to the attorney can be considered as a delivery to the plaintiff in præsenti, subject, however, to the enjoyment of the principal thereof until the death of the donor, then, in the eyes of the law, it can be considered as a valid gift.

In Martin v. Funk, 75 N. Y. 137, 31 Am. Rep. 446, the court, speaking of a similar gift, stated as follows:

"The question involved has been very much litigated, and many refinements may be found in the books in respect to it. Many cases have been found difficult of solution, not so much on account of the general principles which should govern, as in applying those principles to a particular state of facts. It is clear that a person sui juris, acting freely and with full knowledge, has the power to make a voluntary gift of the whole or any part of his prop-

erty. \* \* \* The act constituting the transfer must be consummated, and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee. Enough must be done to pass the title, although when a trust is declared, whether in a third person or the donor, it is not essential that the property should be actually possessed by the cestui que trust, nor is it even essential that the latter should be informed of the trust."

In Langworthy v. Crissey, 10 Misc. Rep. 450, 31 N. Y. Supp. 85, the court in that case said:

"The question here is whether the delivery of the note with the accompanying statement to Mrs. Love, the subsequent death of the deceased (the donor), and the delivery of the note to the plaintiff was equivalent to a present delivery to him. There can be no doubt as to the intention of the deceased, that she intended an absolute gift at the time of such delivery to Mrs. Love, and that the expedient of Mrs. Love's retaining it for a time was to preserve it for the plaintiff, who was absent. To deprive the plaintiff of this property would be to defeat such intention, and the courts will strive to effectuate such intention when it can be done consistent with the rules of law. Assuming, however, that the event upon which the possession of the note was to pass to the plaintiff was the death of the donor, it was an event certain to occur. The donor had done all that was necessary to accomplish her purpose of vesting the title to the note in the plaintiff, and the acceptance may be implied where the gift, otherwise complete, is beneficial to the donee."

See to the same effect Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Matson v. Abbey, 70 Hun, 475, 24 N. Y. Supp. 284; Hunter v. Hunter, 19 Barb. 631; Grymes v. Hone, 49 N. Y. 20, 22, 10 Am. Rep. 313.

"A delivery to the donee in person is not necessary. A delivery of the thing granted to another person for the use of the donee is sufficient. \* \* \* The requirement that actual delivery of the subject of the gift should be had and be clearly proved was to shut the door against fraud by showing unequivocal acts of transfer. This purpose of the law is as well accomplished by this species of delivery as any other. Delivery of this kind has been sustained as to the important transfers of real estate." Langworthy v. Crissey, supra.

[1] There can be no question that the said Hynes, as attorney, was designated as a trustee, to retain possession of the said choses in action, and to deliver them to the donee upon the happening of the event as aforesaid. If this be so, then the suspension of time awaiting the happening of the event, to wit, the donor's death, and the delivery to the plaintiff herein of said choses in action, would be considered a gift inter vivos.

In the case of Devoe v. Lutz, 133 App. Div. 356–358, 117 N. Y. Supp. 339, 341, the court, in discussing questions similar to this, stated:

"Where no rights of creditors or third persons standing in any other or better position than the parties to the trust agreement are concerned, such a trust may be created for any purpose and its terms enforced. To constitute such a trust there must be (a) a designated· beneficiary; (b) a designated trustee; (c) property sufficiently designated or identified to enable title thereto to pass to the trustee; (d) actual delivery of the property to the trustee with the intention of passing legal title thereto."

See, also, Brown v. Spohr, 180 N. Y. 201, 73 N. E. 14. It was further said in the same case:

"It is not necessary that there should be an explicit declaration of trust if the attending circumstances disclose that a trust was to be created, and its purpose and object." Devoe v. Lutz, supra; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531.

There was no period fixed as to the duration of this trust. Could not the donor terminate it at any time? Not having elected to terminate it, upon her death, the plaintiff could call upon the trustee and demand the corpus of the trust estate in his possession and require the trustee to turn it over to him. The corpus of the estate in the hands of the said attorney was sufficiently designated and identified to enable title to pass to the trustee. The title passed by virtue of the letter hereinbefore quoted signed by the donor. See Trow v. Shannon, 78 N. Y. 446; Matter of Crawford, 113 N. Y. 563, 21 N. E. 692, 5 L. R. A. 71; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257.

The defendants lay great stress upon the fact that Minnie A. O'Shea collected the interest upon the notes up to the time of her death, and claim that thereby she retained possession of the notes, irrespective of the delivery to Mr. Hynes, the attorney, and that upon her death the corpus of her estate belonged to the residuary estate under her will. They further rely upon the case of Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634, claiming that under the letter of August 7, 1909, "the attempted gift of these notes was to take effect in the event of the death of Minnie A. O'Shea, and that under those circumstances the alleged gift was invalid as a gift inter vivos."

The case last cited was not a case similar to the one at bar, and can be readily distinguished. In the Young Case the appeal was from a decree of the surrogate upon an accounting of the estate of Joseph Young. It appears from the facts that the decedent in his lifetime inclosed a number of bonds in envelopes, and said envelopes contained a memorandum, signed by him, to the effect that a specified number of bonds therein contained belong to his son "William," and the residue to his son "John," but that the interest to become due thereon was owned and reserved by him during his life, and that, after his death, they belong absolutely to them and their heirs. And in that case all the facts show that the donor retained in his possession and under his control the bonds with the coupons attached thereto, and which coupons he himself detached from the bonds in his possession and collected the interest; and the court there held that, because of his retaining possession and control of the said bonds, the subject of the alleged gift, the gift had not been consummated, and in that respect it can be distinguished from the case at bar, for in this case the donor immediately parted absolutely and irrevocably with the possession and control of the notes the moment she turned them over to John J. Hynes sealed in an envelope, directed to "Mr. John J. Hynes for Dr. P. P. Carlon."

In the Young Case, supra, the court further said at page 435 of 80 N. Y. (36 Am. Rep. 634):

"It is impossible to sustain this as an executed gift, without abrogating the rule that delivery is essential to gifts of chattels inter vivos. It is an elementary rule that such a gift cannot be made to take effect in possession in futuro. Such a transaction amounts only to a promise to make a gift, which is nudum pactum. * * * There must be a delivery of possession with a view to pass a present right of property."

But it has been proven by the evidence in the case at bar that the gift of the corpus had been delivered to her attorney, as trustee for the plaintiff herein, and by such actual delivery the property belonged to the plaintiff, pursuant to the letter signed by Minnie A. O'Shea.

No evidence has been adduced by either party upon the trial that after the delivery of these notes to her attorney, as trustee for the plaintiff, she asserted control over the notes or showed any activity in the collection of the interest, or that she performed any act which could be construed as exercising control over or an intent to retain possession of the notes.

There is a serious question involved herein as to whether the fact that the decedent collected the interest during her lifetime can be construed as a retention of control of the notes on her part. As to that it can be safely said that the notes being in possession of her attorney as trustee, awaiting the consummation of the trust, all control and supervision of said notes was lost to the decedent by her failure to revoke the trust during her lifetime.

From an examination of the authorities concerning a gift causa mortis or a gift inter vivos, the court is unable to find after careful research any authority wherein the courts have decided that, after creating a trust for the benefit of another and delivering the property to a trustee, the donor has retained possession of the property by the collection of interest on the trust. The interest on notes cannot be construed as part of the principal, and it cannot be said that, when said Minnie A. O'Shea received the interest on the principal of the notes, she retained possession of the notes; neither can the collection of the interest destroy the trust as created by her. After Minnie A. O'Shea executed her will and executed the trust for the benefit of the plaintiff, the testimony, as brought out on cross-examination, does not sustain the defendants' contention that she went to a hospital and was operated upon, and that she survived that operation, and the evidence fails to show that she at any time thereafter demanded from her attorney the return of the notes.

This cannot be construed as a gift causa mortis, for to create such a gift it must be made with a view to the donor's death from present illness, or from external and apprehended peril. It is not necessary that the donor should be in extremis, but he should die of that ailment. If he recover from the illness or survive the peril, the gift thereby becomes void and until his death is subject to his personal revocation. The only rule is that the donor must not recover from that illness. If he do, the gift is avoided. See Grymes v. Hone, 49 N. Y. 17–23, 10 Am. Rep. 313.

The court fails to find from the evidence that the donor was under apprehension of death or suffering from an existing disease, or that he was even operated upon; nor can it be presumed from the testi-

mony of the trustee that he understood she went to a woman's hospital to have an operation performed, that such operation did not take place, or that the operation, if it occurred, was a major or minor operation, dangerous or harmless, or one from which a reasonable apprehension of death might be feared. To hold these facts to be such as to constitute a gift causa mortis would be deciding this question contrary to the law. It is true, under the law, that a gift is not presumed. Matter of Bolin, 136 N. Y. 177–180, 32 N. E. 626; Devlin v. Greenwich Sav. Bank, 125 N. Y. 756, 26 N. E. 744. It must be established by evidence that is "clear and convincing, strong and satisfactory," by evidence which is "very plain and satisfactory." Devlin v. Greenwich Sav. Bank, supra; Ridden v. Thrall, 125 N. Y. 572–576, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758; Bray v. O'Rourke, 89 App. Div. 400, 85 N. Y. Supp. 907; Scoville v. Post, 3 Edw. Ch. 203; Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 313.. This rule applies to gifts inter vivos. Bray v. O'Rourke, supra, and authorities cited. The facts herein as to the delivery are uncontradicted, and a gift inter vivos has been created sufficient under the authorities cited.

The defendants raise the further point that the notes so delivered to Minnie A. O'Shea for the moneys advanced by her to enable the defendants to pay the taxes on the property occupied by them were copartnership notes, and therefore the plaintiff cannot succeed herein for the reason that an accounting must first be had as to the copartnership debts, and that all the plaintiff could recover would be one-third of any surplus that may remain after the debts are paid, the same proportion that the decedent would have received if alive.

[2] In examining this question it must be noted that according to the defendants' agreement with the decedent there appear to have been five members of the firm, two of whom did not sign the notes, and, as these notes were not signed in the firm name, a presumption is created that they were not copartnership obligations. Further, the case is devoid of any evidence on behalf of the defendants from which the court can infer that these notes were a partnership obligation to be settled by an accounting. It plainly appears from the evidence that these notes were given to Minnie A. O'Shea to reimburse her for money advanced by her to pay taxes owing by the said firm, and three of the members thereof, including herself, signed the notes. This question has been passed upon in the case of First National Bank v. Wood, 128 N. Y. 35, 27 N. E. 1020, in which case it was held:

"One partner may give a note upon firm matters to another partner in the same firm, and the holder may maintain an action at law upon it without an accounting. * * * No question can arise in the law of partnership relating to the so-called anomaly of one person suing himself."

In Glover v. Tuck, 24 Wend. 153, it was held that one partner may maintain an action of covenant against his copartners, whether the covenant be to pay any sum or do any act for the purpose of launching the copartnership, or whether it be to perform any of the articles after partnership is commenced. An action of covenant will lie, although there may be accounts between the partners which require unraveling in equity. An action on a promissory note is, of course, the

same in substance as an action on an expressed covenant, for it is an expressed promise to pay in writing.

It has, indeed, been held in numerous cases in this state that, where one partner gives another his promissory note, an action at law may be maintained to enforce the note, even though the obligation related to the partnership business, or was given for a debt arising out of a partnership debt. "Such an action may be brought on a note or other obligation, given by one partner to another for a valid consideration, although the transaction may inure to the benefit of the firm." 30 Cyc. 467; Crater v. Bininger, 45 N. Y. 545; Gridley v. Doyle, 4 N. Y. 486; Farmer v. Putnam, 35 Misc. Rep. 32, 70 N. Y. Supp. 179; Guccione v. Scott, 21 Misc. Rep. 410, 47 N. Y. Supp. 475, affirmed 33 App. Div. 214, 53 N. Y. Supp. 462; Barbeau v. Picotte, 13 N. Y. Supp. 132.[1]

The court has endeavored to cover all of the necessary questions of law involved herein, and, after a careful and exhaustive examination of the authorities covering this subject, the court concludes that the plaintiff has sufficiently proven a gift in præsenti of the notes in question to the plaintiff, and the verdict as directed must stand.

The motion for a new trial is, therefore, denied.

Motion denied.